J. B. BEADLES v. W. R. FRY, *City Treasurer of Perry, et al.*

(Filed September.5, 1905.)

1. MANDAMUS—Pleadings Allowed In. Where a good and sufficient alternative writ of mandamus has been issued and served, and no jurisdictional question is involved, it is the duty of the defendant to file his answer to such writ in the first instance, and as the answer, under the statute, is substituted for the return in the English courts and as the statute expressly prohibits any pleading except the alternative writ and the answer, the defendant should assign in his answer any legal reasons, as well as plead the facts, if any exist, on which he relies to defeat the issuance of the peremptory writ. And where a defendant files a motion to quash which is in the nature of a general demurrer, the court will treat such pleading as an answer admitting the facts recited in the alternative writ, and apply the law thereto.

2. JUDGMENT AGAINST CITY OF FIRST CLASS—Execution. In the absence of statutory inhibition, an ordinary execution may issue on a judgment against a city of the first class, and while on the ground of public policy, it cannot be levied on any of the general revenues of the city, either.before or after they are collected, or upon any property, either real or personal, which is reasonably necessary for governmental purposes, still if any property can be found which is not reasonably necessary for the public welfare, and which is held by the city as private property for its benefit, it may be levied upon and sold to satisfy such execution.

3. SAME—Statute of Limitations. Under sec. 4337 of the Statutes of Oklahoma of 1893, which provides that "if execution shall not be sued out within five years from the date of any judgment that now is or may hereafter be rendered, in any court of record in this Territory, or if five years shall have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor," a judgment against a city of the first class becomes dormant after five years from the date of its rendition, unless the judgment creditor, within such time, cause execution to issue thereon.

4. SAME. Where a judgment creditor fails to have execution issued within five years on a judgment against a city of the first class and also fails to revive such judgment within one year after it be-

comes dormant, it will be treated as barred by the statute of lim-
itation, and the courts will deny the aid of mandamus to compel
payment of the same.

5. SAME—Resolutions of City Council—Agreement of Creditors—Ef-
fect. An agreement between practically all of the judgment cred-
itors of a city, that such a city shall pay such creditors in the or-
der of priority of the date thereof, instead of paying such judg-
ment creditor his pro rata share; and a resolution of a city coun-
cil which refers to such agreement and orders the city treasurer to
pay such judgments according to such contract, do not change the
legal status of the city toward any of such creditors, nor do they
excuse any judgment creditor from suing out an execution within
five years of the date his judgment was rendered, or from securing
a revivor of his judgment within one year after it became dormant.

(Syllabus by the Court.)

*Original action of Mandamus in this court.*

*J. B. Diggs* and *Dale & Bierer,* for plaintiff.

*A. N. Whiteside, W. M. Bowles,* and *Thomas H. Doyle,*
for respondent.

Opinion of the court by

BURWELL, J.: On January 8th, 1898, H. A. Smith re-
covered judgment against the city of Perry for $20.35. On
March 14th, 1898, James Lobsitz also recovered judgment
against the same defendant for $504.41. These two judgments
were duly assigned to J. B. Beadles, plaintiff in this case. The
two judgments with accrued interest (nothing having been
paid on either of them), on June 3rd, 1905, (the date on
which this action was commenced), amounted to $757.66. On
the last named date there were sufficient funds in the city
treasury in the judgment fund, to satisfy both of these claims.
The city officers, having refused to pay these judgments, the
plaintiff commenced this action in mandamus to compel pay-
ment out of such funds. Service was duly had on the de-
fendants. The defendants have filed a pleading which they

entitle "A motion to quash alternative writ of mandamus."
The plaintiff insists that this pleading should be treated as a
return to the writ and the case disposed of on its merits.
With this view we concur.  A defendant in mandamus, as in
other civil cases, may appear specially for the purpose of
challenging the jurisdiction of the court, but he may not,
under the statutes, file demurrers and other dilatory pleadings.
The motion filed is in the nature of a demurrer, and, under
our statutes, a demurrer is a pleading.  Under section 3964
of the Statutes of Oklahoma of 1893, the only pleadings in
a civil case are the petition, the answer, the reply, and a de-
murrer to any such pleadings.  An alternative writ of man-
damus and the answer (which is the return), are the only
pleadings allowed in an action for mandamus after the is-
suance of such writ, and they may be amended the same as
a petition or answer in any other case.  Perhaps they may
be challenged by a motion to make more definite and certain,
or by other motions which might be directed against any
other petition or answer, but neither can be attacked by de-
murrer; and where a general demurrer is filed to an alterna-
tive writ, the court should treat it as an admission of the
facts alleged and apply the law to such facts.  We are aware
that there are authorities to the contrary (*Elliott v. Oliver*
[Ore.] 29 Pac. 1) where the statute is silent as to such plead-
ing, or expressly authorizes it; but our statute absolutely
prohibits it.   (Sec. 4603, Stat. of Okla. 1893.)   Under our
statutes, mandamus is intended to compel the performance of
any act which the law specifically enjoins as a duty, resulting
from an office, trust or station.  It is intended as a speedy
remedy, and may be granted by the court in term time, or
by the judge at chambers   The purpose of an answer, or re-

turn, by a defendant in a case of this kind is to enable him to recite the facts if any exist, which will excuse him from obeying the order contained in the alternative writ. His answer may be in the nature of a confession and avoidance, or it may recite affirmative facts or positive denials; or it may contain all, thereby presenting an issue of law or fact, as the circumstances justify. But whatever excuse or reason he may have for not obeying the writ should be set out in his answer, and he will not be permitted to delay the final termination of the action by attacking such pleading with a demurrer or motion which contains only matters which should be included in his return. The pleading filed by the defendants puts in issue the sufficiency of the alternative writ, and one of the questions argued is the statute of limitation. As will be observed, the two judgments in question were rendered more than five years before this suit was commenced, and no execution was ever issued on either of them.

Section 4337, of the Statutes of Oklahoma of 1893, provides:

"If execution shall not be sued out within five years from the date of any judgment that now is or may hereafter be rendered, in any court of record in this Territory, or if five years shall have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor."

It is insisted, however, by the plaintiff, that the above statute has no reference to a judgment against a municipality; and that, under the law, an ordinary execution may not be issued on a judgment against a city of the first class. Upon this question there is a division of opinion, some courts hold-

ing from principle, and others by reason of statutory provisions, that an execution cannot issue against a city, while others maintain that a judgment creditor may sue out an execution against a city the same as against any other judgment debtor. It is stated in the brief of the defendants that we have no statute upon the subject. The statement is not denied by the plaintiff, and we have been unable to find any which authorizes the issuance of an execution against a city, or which denies the authority to have one issued. Hence the question must be determined from general principles. It has been held that one cannot sue a state or any of its political subdivisions for debt, without express authority granted either in the constitution or by legislative enactment. (*Oklahoma A. & M. College, v. Willis and Bradford,* 6 Okla., 593.) But when the statute grants the authority to sue a political subdivision of a state, that authority also carries with it the implied right to the aid of legal process to collect any judgment which may be rendered in the action. We fully appreciate the necessity of such rules as will enable the city officers to conduct the affairs of government without undue embarassment; and public policy demands that property which is necessary to the due administration of the city, or which is dedicated to a public use, or the revenues belonging to the different funds, whether collected or not, cannot be seized under execution. It frequently happens, however, that a city is possessed of property both real and personal which is not and never can be needed for municipal use, the appropriation of which to the payment of the city's debts could not in any way affect the public. Such property, by the great weight of authority, is treated as the private assets of the city, and may be levied upon and sold under an ordinary execution.

Mr. Dillon, in his work on Municipal Corporations (3rd. ed.) vol. 2, p. 572, says: "On principle, in the absence of statutable provision, it would seem to be a sound view to hold that the right to contract and the power to be sued gives the creditors a right to recover judgments; that judgments should be enforceable by execution against the strictly private property of the (city) corporation, but not any against property owned or used by the corporation for public purposes.". This same rule is also recognized by the following authorities: Beach on Public Corporations, vol. 2, p. 1380, sec. 1422; 17 Cyc. p. 979, sec. 9 a; *Hart v. City of New Orleans,* 99 Fed. Rep. 149; *State ex rel Courter v. Buckler, et al.,* [Ind.] 35 N. E. 846; *City of Laredo v. Benavides, et al.,* [Tex.] 25 S. W. 482; *Murphree v. City of Mobile et al.,* [Ala.] 18 So. 740; *Holaday v. Frisbie,* 15 Cal. 631.

As to whether property is reasonably necessary for public use, must ultimately be determined by the court, and in case of doubt it should be resolved in favor of the city, for the interests of the individual must be subservient to the due and proper administration of government. In other words, as the revenues of a city must, in a large measure, be raised by taxation, the creditor will be required to wait for payment rather than to permit him to embarass the corporation by selling property needed for the public welfare. The creditor may sue out an execution and search for property subject to sale as in other cases. The statute has no exceptions as to a city.

It is insisted that the statutes make it the duty of the city officers to provide a fund for the payment of these judgments and that, until such fund is provided, the statutes of limitation do not run; that the rule as to a judgment is the

SUPREME COURT OF OKLAHOMA.

same as has been applied to warrants, which is, that the statutes do not run as to a warrant drawn on a particular fund until there are moneys in such fund to meet it, citing authorities holding that a judgment against a city or county is but an audited demand against such municipality, which is no longer open to contest. These cases, it should be remembered, either expressly decide or assume that an execution cannot issue against a city. We have just held that it may. And, again the duty imposed upon the city officers to provide the fund to pay all judgments would not operate to suspend the running of the statutes of limitation, especially where another statute expressly provides that such judgment shall be dormant after five years from its rendition, if no execution is issued thereon.

The plaintiff has also taken the position that it was not necessary to revive the judgments which are made the basis of this action. We hold that it was. It was not the intention of the legislature, as was said by Justice Brewer in the case of *United States, ex rel. Field v. Township of Oswego,* 28 Fed. Rep. 55, in construing the Kansas statute, which is exactly like ours, that a judgment should remain in force indefinitely; and in that case it was held necessary to revive a judgment against a municipality.

Justice Foster, in the case of *Brockway v. Township of Oswego,* 40 Fed. Rep. 612, in passing upon the same statute, held that, under the laws of Kansas, a judgment against a municipality, if no execution is issued thereon in five years, becomes dormant, and that the judgment creditor might revive it at any time within one year thereafter.

In each of these cases it was held that the causing to issue of an alternative writ of mandamus was equivalent to issuing a summons. Upon the correctness of this position we express no opinion, as it is not involved in this case; and, as was said by Justice Foster, strong reasons could be urged against it. Having failed to issue execution within five years from the date of the respective judgments, and not having revived either of the judgments within one year (See sec. 4325, St. of Okla. 1893,) after they became dormant, it must be held that they are each barred by the statute of limitation, and that no recovery can be had thereon. (*Newton v. Arthur et al,* [Kans.] 55 Pac. 446; *Mawhinney et al. v. Doane, et al.* [Kans.] 20 Pac. 488; *Israel v. Nichols, et al.* [Kans.] 14 Pac. 438; *Brockway v. Oswego Township* [Kans.], 4 Pac., 79; *Baker v. Hummer et al.* [Kans.] 2 Pac., 808; *Angell v. Martin,* 24 Kans. 334.)

There is but one other question to be considered. It is alleged in the alternative writ that all of the creditors, with a few exceptions, agreed, in writing, that the city authorities should pay all judgments against the city according to priority of date, which agreement was filed with the city clerk; and that, thereafter, and on December 3, 1901, the city passed a resolution as follows:

"Whereas, the judgment creditors holding judgments against the city of Perry have practically all signed waivers of the right, if such right exists, to payments of said judgments *pro rata,* and therein consent to the payment of said judgments in the order of their rendition against the city.

"Therefore, be it resolved that the city treasurer is hereby authorized and directed to pay the judgments existing against the city of Perry in the order of their rendition, out

of the funds now on hand as they shall accrue in the judgment fund."

It is alleged that this agreement and resolution of the city council prevented the running of the statutes. This resolution was passed at a time when the plaintiff's judgments were in full force and effect. The city council did not attempt to renew its liability on these judgments. Without expressing our views as to whether such judgments should be paid *pro rata,* or in the order of priority as to date, we are of the opinion that the council could not change the law, and if the resolution purported to change it, it would be void; and if it was in conformity with the law it would not change the relation of the parties.

The peremptory writ is denied, and the cause dismissed at the cost of plaintiff.

Pancoast, J., not sitting; all of the other Justices concurring.