## *In re* BOARD OF EDUCATION OF THE CITY OF PERRY.

No. 2153.	Opinion Filed April 12, 1913.

(130 Pac. 951.)

1.	**JUDGMENT — Validity — Persons Concluded—Judgments Against School Boards.** The owner of several judgments against a board of education is not concluded by a judgment against their validity in a suit by the board against its treasurer to mandamus him to pay certain judgments, in which said suit the dormancy of the judgments sought to be concluded was directly involved, although the owner of said judgments employed counsel in that suit and urged their validity and assumed the conduct of and actually engaged in said suit.

2.	**LIMITATION OF ACTIONS — Agreement to Waive — Estoppel.** Where public property of a board of education cannot be seized on execution, and the board enters into a valid agreement with judgment creditors to apply the judgment fund to judgments in order of entry and complies therewith, it cannot, after the expiration of the statutory period when a judgment becomes dormant for failure to issue execution, plead the statute of limitations as a bar to those judgments not yet reached for payment under the agreement. The board of education is estopped both on the contract and on the ground of equitable estoppel.

(Syllabus by the Court.)

*Error from District Court, Noble County;*
*W. M. Bowles, Judge.*

Proceeding by the board of education of the city of Perry for issuance of funding bonds. From the judgment, certain judgment creditors bring error. Reversed and remanded.

*Devereux & Hildreth* and *Dale, Bierer & Hegler,* for the board of education.

*H. E. St. Clair* and *H. A. Johnson,* for the judgment creditors.

TURNER, J. On June 8, 1910, "the board of education of the city of Perry of the state of Oklahoma," a corporation, commenced proceedings in the district court of Noble county the object of which was to fund certain judgments outstanding against the board by an issue of negotiable coupon bonds pursuant to section 25 of the Schedule to the Constitution and an act entitled "An act to enable counties, municipal corporations and boards of education of any city or school district to refund their indebtedness, approved March 11, 1905." The petition set forth a list of its outstanding judgment indebtedness accrued prior to November 16, 1907, marked "Exhibit A," which is admitted to be valid. Also a list of judgments, marked "Exhibit B," rendered and entered against the board prior to that time, which it alleged were dormant and constituted no part of the judgment indebtedness of the board, for the reason that the same had been rendered and entered more than six years prior to said date and had not been revived, and for the further reason that no process had issued to enforce the payment of the same. The petition, among other things, sought to have the validity of said judgment indebtedness determined, and alleged that an arrangement had been made with all valid judgment holders for funding the same at par and accrued interest with the funding bonds of the school district; that by prior resolution of said board said bonds had been duly authorized and directed to issue upon the adjudication and approval of the court; that the form of bonds and interest coupons had been prescribed, and due provision made for the

necessary tax to pay said interest when due and to provide a sinking fund to pay said bonds at maturity; and prayed that the amount of the valid judgment indebtedness outstanding against said board be determined by the court and that the board be ordered to issue, etc.

Thereafter came J. B. Beadles, L. N. Beadles, partners as J. B. Beadles & Sons, and, in effect, alleged themselves to be the owners and assignees of sixteen of the 26 judgments set forth in "Exhibit B," and by answer put in issue the validity of said judgments, and alleged that for certain reasons the board was estopped to assert their dormancy. Like answers were filed by the owners of the remaining judgments set forth in said exhibit. After reply, in effect, that said Beadles were estopped to assert the validity of said judgments, and that the other judgments were barred by the statute of limitations, there was trial to the court and judgment for the board declaring said judgments and each of them "void and dormant and no legal indebtedness against said board." The Beadles alone bring the case here.

The sole question involved is the dormancy of their judgments. The record discloses that, being pressed by judgment creditors, the board met July 14, 1899, when, as shown by its minutes:

"The matter of paying off judgments *pro rata* and bonding was referred to finance committee and they to confer with Attorney Quick and report at next meeting."

On June 4, 1900, it was:

"Moved that Treasurer Todd is hereby requested to pay out money *pro rata*—money now held by him—*pro rata,* on judgments against the district. Motion received no second. On motion the matter was referred to finance committee and Attorney Quick."

On July 6, 1900:

"On motion Treasurer Todd was requested to hold the money now in his hands belonging to the district as a judgment fund until further directed by the board. On motion the attorney for the board was instructed to defend all cases where there is any doubt as to the legality of their claim."

And on November 5, 1900:

"Letter read by secretary from R. J. Edwards, of Oklahoma City, this territory, regarding the payment of judgment against this district in order of their rendition. Said Edwards writes both as an attorney and as holder of about fifteen thousand dollars of the judgment against the board. Mr. Beadles holding five or six thousand dollars represents with him about four-fifths of the judgment indebtedness. They agree upon the plan. Plan proposed by letter discussed. It being perfectly fair and reasonable, it was moved and seconded that this board acquaint Mr. Todd, treasurer of this school district, with their desire to proceed after the plan already mentioned, namely, paying judgment indebtedness in the order of their rendition, as the only practical way to wipe out the total debt in the near future. Motion carried."

Thereafter Mr. Todd write thus:

"To the judgment creditors of the school district 52, board of education of the city of Perry, Oklahoma.

"I, as treasurer, through the advice and consent of the board of education, have formulated the following plan to liquidate the judgment indebtedness of said school district:

"All creditors who are conversant with the facts know that on October 3, 1894, the school district bonded for $18,000 having at that time a floating warrant indebtedness of $10,000, making a total indebtedness of $28,000, the limit of indebtedness that could be legally contracted under the United States statutes, limiting the amount of debt which municipal corporations can create to four per cent. of the assessed valuation. The assessed value at that time being in round numbers $700,000, four per cent. making a possible legal indebtedness of $28,000. Shortly after this debt was created it was decided that lots in the city of Perry not deeded by the townsite board to the individuals were not subject to taxation, this item with the subsequent depreciation of the value of city property, reduced the valuation to below $400,-000, which has since steadily increased until now we have a valuation approximately $450,000. In the meantime school buildings have been erected costing far in excess of the amount raised by bonds, buildings more expensive than the original estimates. This with a yearly deficit of funds in the early days to meet the current expense run up a warrant indebtedness of $29,000 of this amount about $19,000 has been put into judgments. At this point the school board thought it advisable to allow no more judgments, hence informed the warrant holders that in the future the 4 per cent. limit would be pleaded and no judgments have been

taken for about one year.  Eighteen months ago a peremptory mandamus was asked by one judgment creditor in the Supreme Court, requesting an order (2) to compel a levy to be made sufficient to pay judgments, which was refused by the Supreme Court of the territory.  In consideration of all these facts we are placed in the position, as public servants, to decide between standing on the technical legal rights and refusing payment in total or recognizing our moral obligations to pay the debt.  Public sentiment is divided with a predominant disposition to finally pay out if it can be done without oppressing the taxpayer.  It is a controverted legal point as to whether payment on the judgments shall be made in order of rendition or *pro rata* and no party at interest has ever been willing to take the initiatory steps to determine the issue.  The payment *pro rata* involves an endless complication of court records in entering the *pro rata* payments which under the present laws and valuations could not exceed six or seven per cent. per annum, not as much annually as the accruing interest, many of the judgments are small.  In view of these facts, we have thought that if a written waiver of the right (if such right exists) of each judgment creditor who may be affected to payment *pro rata* be signed by each creditor, we might then see our way clear to finally liquidate the whole judgment indebtedness; and if such waiver be signed by each creditor, we as a board pledge our official and personal influence to carry out the above plan and ask that the enclosed waiver be signed and mailed to us by return mail.

"Geo. Todd."

To which each judgment creditor, save one, responded by signing said waiver, which reads:

"I, the undersigned judgment creditor, holding judgment of record against the board of education of the city of Perry, Noble county, Oklahoma Territory, hereby ask that the school treasurer pay all judgments against the board of education of the city of Perry, in order of rendition, hereby waiving right (if such right exists) to payment *pro rata* and this waiver shall apply to grantees and assigns; said judgment was rendered ——, 18——, for the sum of —————— dollars."

The record further discloses that pursuant to this arrangement, which was made with all judgment holders save one, the board of education paid all judgments in the order of their rendition down to judgment number 29, belonging to J. B. Beadles,

after which, in the fall of 1905, it stopped payment and refused to pay any more, including the judgments in question.

It is insisted by the board, as to the sixteen judgments set forth in "Exhibit B" as belonging to said Beadles, that they are estopped to assert their validity by reason of the record in the case of *Wenner v. Board of Education of the City of Perry*, 25 Okla. 515, 106 Pac. 821. As these sixteen judgments are conceded to be the same judgments passed on in that case, where they were held to be dormant and to constitute no valid indebtedness against the district, it seems that the point is well taken—that is, if the Beadles are bound by the judgment in that case, and if all that was there decided, or might have been, is *res judicata* as to them. That was a suit in mandamus brought by said board against Charles L. Wenner, treasurer of the board, to compel him to pay these and other judgments out of a judgment fund in his hands. The question was, as here, whether these judgments were dormant because of section 4625, Wilson's Rev. & Ann. St. 1903 (Comp. Laws 1909, sec. 5669), which reads:

"If execution shall not be sued out within five years from the date of any judgment that now is or may hereafter be rendered, in any court of record in this territory, or if five years shall have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor."

And that, too, notwithstanding section 6169, Wilson's Rev. & Ann. St. 1903 (Comp. Laws 1909, sec. 8120), which reads:

"Whenever any final judgment shall be obtained against any school district, the district board shall levy a tax on all taxable property in the district for the payment thereof; such taxes shall be collected as other school district taxes, but no execution shall issue on such judgment against the school district; and in case the district board neglect to levy a tax as aforesaid, for the space of thirty days after such judgment shall become final, or in case the proper officer shall neglect to collect the tax levied within the time and in the manner provided by law, then the judgment creditor of the district may have and recover a judgment against the officer or officers or his or their sureties, so in default, for the

amount due him on such judgment against the district, with costs, upon which execution shall issue."

And such they were held to be by the court, which·in the syllabus said:

"Section 437, art. 20, c. 66 (section 4635), Wilson's Rev. & Ann. St. 1903, providing that a judgment shall become dormant if execution be not sued out thereon within five years is applicable to judgment against school districts notwithstanding section 68, art. 3, c. 77 (section 6196), same statutes, provided that the district board shall levy a tax for the payment thereof, and no execution shall issue thereon; this for the purpose that a writ of mandamus to enforce payment in such case is the legal equivalent to the statutory writ of execution."

Whether this opinion is right or wrong we need not say, as nothing there decided is *res judicata* as to the Beadles, for the reason that they were not parties or privies to that suit, and ·hence are not· bound thereby, although it appears that they employed counsel to there urge the validity of these same judgments and assumed the conduct of and actively engaged in said suit.

In *Lovejoy v. Murray,* 3 Wall. 1, the court, quoting from Greenleaf on Evidence, secs. 522-3, said:

" 'Justice requires,' he says, 'that every cause be once fairly and impartially tried; but the public tranquility demands that, having been once so tried, all litigation of that question, and between the same parties, should be closed forever. It is also a most obvious principle of justice, that no man ought to be bound by proceedings to which he is a stranger, but the converse of this rule is equally true, that by proceeding to which he was not a stranger, he may well be bound. Under the term parties, in this connection, the law includes all who are directly interested in the subject-matter, and had a right to make defense, or to control the proceedings, and to appeal from the judgment. This right involves, also, the right to adduce testimony, and to cross-examine the witnesses adduced on the other side. Persons not having these rights are strangers to the cause. But to give full[1] effect to the principle by which parties are held bound by a judgment, all persons who are represented by the parties, and claim under them, or in privity with them, are equally concluded by the same proceedings.' 'The ground, therefore, upon which persons standing in this relation to the litigating party are bound by the proceedings to which he was a party is, that they are identified

with him in interest; and whenever this identity is found to exist, all are alike concluded.' "

*Litchfield v. Goodnow,* 123 U. S. 549, was a suit to recover taxes paid under the circumstances set forth in *Striker v. Good-now,* at page 527, of the same volume. The suit was brought by Goodnow, assignee of the Iowa Homestead Company, in his life-time, against Mrs. Litchfield in her lifetime, to recover the amount of certain taxes for certain years paid by said company on cer-tain lands on the Des Moines river owned by her by and through conveyances from another company. As a defense to the action, the prior adjudication in a certain case was pleaded in bar; but the court said:

"The defense of prior adjudication is disposed of by the fact that Mrs. Litchfield was not a party to the suit in which the ad-judication relied on was had. At the time of the commencement of the suit she was the owner of her lands, and they were de-scribed in the bill, but neither she nor anyone who represented her title was named as a defendant. She interested herself in se-curing a favorable decision of the question involved as far as they were applicable to her own interests, and paid part of the expense; but there was nothing to bind her by the decision. If it had been adverse to her interest, no decree could have been entered against her personally either for the lands or the taxes. Her lands were entirely separate and distinct from those of the actual parties. A decree in favor of or against them and their title was in no legal sense a decree in favor of or against her. She was indirectly interested in the result, but not directly. As the questions affecting her own title and her own liability for taxes were similar to those involved in the suit, the decision could be used as a judicial precedent in a proceeding against her, but not as a judgment binding on her and conclusive as to her rights. Her rights were similar to, but not identical with, those of the persons who were actually parties to the litigation.

"Greenleaf, in his treatise on the Law of Evidence, vol. 1, sec. 523, states the rule applicable to this class thus: 'Under the term *parties,* in this connection, the law includes all who are di-rectly interested in the subject-matter, and had a right to make defense, or to control the proceedings, and to appeal from the judgment. This right involves also the right to adduce testi-mony, and to cross-examine the witnesses adduced on the other side. Persons not having these rights are regarded as *strangers* to the cause. But to give full effect to the principle by which

parties are held bound by a judgment, all persons who are represented by the parties and claim under them, or in privity with them, are equally concluded by the same proceedings. We have already seen that the term privity denotes mutual or successive relationship to the same rights of property. The ground, therefore, upon which persons standing in this relation to the litigating party are bound by the proceedings to which he was a party is, that they are identified with him in interest; and whenever this identity is found to exist, all are alike concluded. Hence, all privies, whether in estate, in blood or in law, are estopped from litigating that which is conclusive on him with whom they are in privity.' The correctness of this statement has been often affirmed by this court: *Lovejoy v. Murray*, 3 Wall. 1, 19; *Robbins v. Chicago City*, 4 Wall. 657, 673; and the principle has been recognized in many cases. Indeed, it is elementary. *Hale v. Finch*, 104 U. S. 14, 22; *Butterfield v. Smith*, 101 U. S. 570.

"In the condition of parties to the record during the whole course of the litigation between the Homestead Company and those who were named as defendants, Mrs. Litchfield had no right to make a defense in her own name, neither could she control the proceedings, nor appeal from the decree. She could not in her own right adduce testimony or cross-examine witnesses. Neither was she identified in interest with anyone who was a party. She owned her lands; the parties to the suit owned theirs; her rights were all separate and distinct from the rest, and there was no mutual or successive relationship between her and the other owners. She was neither a party to the suit, nor in privity with those who were parties; consequently she was in law a stranger to the proceeding and in no way bound thereby. As she was not bound, the Homestead Company and its assigns were not. Estoppels, to be good, must be mutual."
—and affirmed the judgment of the trial court.

*State ex rel. Kane v. Johnson, Comptroller*, 123 Mo. 43, 25 S. W. 855, was a suit by relator, as chief of the city fire department, to mandamus respondent, the comptroller of the city, to countersign his salary warrant drawn upon the city treasurer. Among other defenses interposed, was a judgment in a suit by a taxpayer to restrain payment of the salary, in which Kane was not a party, though he employed counsel to defend the suit. In that suit Gilmer, the auditor of the city, as well as respondent, were defendants, who by the judgment and decree rendered and entered were perpetually enjoined and restrained from ever sign-

ing or countersigning any warrant of similar character. The court said:

"Is he estopped by the suit of Ransom against respondent and Gilmer? The rule on this subject is that a matter once adjudicated by a court of competent jurisdiction may be invoked as an estoppel in any collateral suit, in any court of law or equity, or in admiralty, when the same parties or their personal representatives, or one of the parties and the privy or privies of the other, allege anything contradictory to it; and 'those who assume a right to control or actively participate in the trial or its management, though not formal parties, will be concluded.' *Henry v. Woods,* 77 Mo. 277; *Stoddard v. Thompson,* 31 Iowa, 80; *Strong v. Insurance Co.,* 62 Mo. 289; *Wood v. Esnell,* 63 Mo. 193; *Landis v. Hamilton,* 77 Mo. 554; *Conger v. Chilcote,* 42 Iowa, 18. In order to make an estoppel, however, the action must be between the same parties as the former suit or their privies. Parties are understood to be 'all persons having the right to control the proceedings, to make defense, to adduce or examine witnesses, and to appeal from the decision, if an appeal lies.' 1 Greenl. Ev. sec. 535. 'Personal representatives, heirs, devisees, legatees, assignees, voluntary grantees, or judgment creditors or purchasers from them with notice of facts,' are privies. *Id.,* sec. 189. The relator was not a party to the suit by Ransom against the respondent and Gilmer, nor could he have appealed from the judgment rendered therein. The mere fact that he employed attorneys to defend that suit, who participated in its trials and the examination of witnesses, ought not to estop him from now asserting his rights, as he claims nothing by, through, or under them. While relator might have become a party defendant to that suit had he felt so inclined, he was under no obligations to do so. If the purpose of the suit was to pass upon his rights, he should have been made a party. *Hope v. Mayor, etc.,* 72 Ga. 246. *Samis v. King,* 40 Conn. 298, was a suit by injunction to restrain the payment of salary to policemen not legally appointed, brought against the clerk, auditor, and treasurer of the city, but the city itself was not made a party defendant; and it was held that it was not enough that the city assumed the defense of the case through its attorney; that the city was a necessary party; and that, so long as it did not appear upon the record, no decree could be passed against it."

We are therefore of opinion that there is nothing in the Wenner case to estop the plaintiff in this. Adhering, then, to the Wenner case, in which we held that these judgments would other-

wise be dormant, on account of the bar of the statute, but for the arrangement, *supra,* between the board and the owners thereof, relied on in support of the Beadles' plea of estoppel, can it be said in view of this arrangement, whereby these judgment creditors were induced to forego the right to enforce their collection by taking such steps as the law permitted, that the board has any right thereunder or in equity and good conscience to successfully interpose the bar of the statute invoked in that case? We say no. Rather will we hold that said arrangement is nothing less, in effect, than a contract between the parties in interest to stay proceedings pending their payment, and of itself and in equity and good conscience is sufficient to preclude the board from asserting the bar of the statute. That the effect of this, or a similar arrangement pleaded under like circumstances, was to work an estoppel against a municipality was held by the Supreme Court of the United States in *Beadles v. Smyser, Mayor, etc.,* 209 U. S. 393, on error to the Supreme Court of Oklahoma Territory, reported in 17 Okla. 162, which was followed in the Wenner case, which followed *Beadles v. Fry,* 15 Okla. 428. In reversing *Beadles v. Smyser, Mayor, etc.,* 17 Okla. 162, the court said:

"Accepting the decision of the Supreme Court of Oklahoma, rendered in 15 Oklahoma, *supra,* construing the statute so as to permit the issuance of execution against the municipality, with the right to levy upon the private property of the corporation if it has any, could the city take advantage of the failure to issue execution under the circumstances shown in this case? * * * That the principles of right and justice, upon which the doctrine of estoppel *in pais* rests, are applicable to municipal corporations, is recognized by textwriters and in well-considered cases. In 1 Dillon on Municipal Corporations (4th Ed.), in a note to section 417, that learned author says: 'Any positive acts (*infra vires*) by municipal officers which may have induced the action of the adverse party, and where it would be inequitable to permit the corporation to stultify itself, by retracting what its officer had done, will work an estoppel.' And this case does not rest on the ground of equitable estoppel alone. The manner of liquidation of these judgments was the subject of express contract between the parties. In the present case, by the action of the city council, the judgment creditors were so placed that during the

time, at least while the city council were carrying out the arrangement of December 3, 1901, in good faith, they could not consistently, with fair dealing and the terms of the contract on their part, issue an execution to seize the property of the municipality; had they undertaken to do so, a court of equity would have promptly restrained such proceedings. It is averred, and not denied, that up until the year 1905 the city council made a levy each year for the largest amount which the statute permitted, to create a judgment fund out of which to pay, and out of which was regularly paid, the outstanding judgments against the city, and that these payments continued until the plaintiff's judgments were reached, which were next in order. While thus acting to the limit to which the law permitted, and in good faith carrying out the arrangement between the parties, it is perfectly apparent that the plaintiff was not in a position to seize by execution any property of the municipality. * * * As we said, the principles of natural justice and fair dealing are alike applicable to municipal corporations as to individuals, and to permit the city to escape the payment of judgments, whose validity is not otherwise questioned, for failure to issue execution or sue out a writ of mandamus during the time when the action of the city officers was such as to prevent the exercise of the right, would be to permit the action of the representatives of the city, who have had the benefit of the contract during the time both parties were observing its obligations, to work a gross injustice upon the creditors holding valid judgments against the municipality * * * It is not argued at the bar in this case that the arrangement with the judgment creditors was void for want of power in the municipality to make the arrangement of December, 1901, and we fail to see any valid reason why the municipality might not enter into this arrangement. It was permitted by law to make an annual levy of five mills on the dollar. 1 Wilson's Statutes, 1903, sec. 466. If the judgment creditors and the municipality saw fit to make an arrangement by which the amount of this annual levy might be distributed by the consent of the creditors among them in accordance with the priority of their judgments, we perceive no reason why this may not be legally done. The effect of this arrangement was to prevent the judgment creditor from taking such steps as the law permitted to collect his judgment, and, upon principles of common right and justice, it would not do to permit the city to carry out such an arrangement during nearly all the five-years' period, and then meet its obligation by a plea of the statute of limitations upon the ground that the judgments had become dormant, while both parties were recognizing their

binding obligation and doing all that the law permitted, to effect their satisfaction, and had entered into a contract which prevented the judgment creditors from taking steps to avail themselves of their right to collect their judgments by execution or by writ of mandamus."

We are therefore of opinion that the board is estopped to assert the bar of the statute and the consequent dormancy of the judgments set forth in "Exhibit B" as belonging to the Beadles, whether acquired before or *pendente lite;* that the same constitute valid and subsisting outstanding indebtedness against the board, and should be funded in the same manner as those set forth in "Exhibit A," and that this cause should be reversed and remanded, to be proceeded with according to this opinion. It is so ordered.

HAYES, C. J., and KANE and DUNN, JJ., concur; WILLIAMS, J., absent, and not participating.