STATE ex rel. COM'RS OF LAND OFFICE v. WEEMS et al.

No. 31308. Jan. 29, 1946.

Rehearing Denied May 7, 1946.

*168 P. 2d 629.*

Mac Q. Williamson, Atty. Gen., and Houston W. Reeves, Asst. Atty. Gen., for plaintiff in error.

Wall & Green, of Sallisaw, and Jarman & Jarman, James V. Harbison, and Ed White, all of Oklahoma City, for defendants in error.

Little & Smith, of Madill, amici curiae.

ARNOLD, J. The defendants procured a loan from the School Land Department of the state and $10,000 was paid to them out of the public school fund. After default in the payment of the principal and interest provided by the note made therefor, suit was filed for judgment on the obligation and

foreclosure and judgment was entered. After sale of the real estate mortgaged and foreclosed there remained a deficiency judgment of $2,067.40.

The School Land Commission bought the land at the foreclosure sale and by certificate sale sold same to one Kenny who made default after making certain payments and the sale to him was canceled. Before this happened, however, and about a year after the entry of the judgment, the Commissioners of the Land Office, based upon its knowledge of the facts and the representations and insistence of the defendants, resolved **to release the deficiency judgment and** executed and filed of record a satisfaction and release which, omitting formal parts, is as follows:

"In consideration of the sum of one dollar and the further consideration that the lands held as security for said loan was foreclosed and 'the lands purchased by the State at such foreclosure sale and have since been advertised and sold at public sale for a price sufficient to cover the full amount of the plaintiff's indebtedness in this case,' the plaintiff hereby acknowledges full satisfaction of the deficiency judgment herein and releases the same of record.

"Upon authority and direction of the Commissioners of the Land Office this satisfaction and release of judgment is executed by the undersigned as attorney of record for plaintiff in this case."

After an unsuccessful attempt to get the clerk of the court of Sequoyah county, wherein the judgment was entered, to expunge the release from the record, the Commissioners of the Land Office filed a motion in the foreclosure action to require the clerk to expunge the release on the ground that same was invalid. Eventually the defendants responded to the motion, alleging the validity of the release and payment of the judgment by compromise and settlement and that the judgment was dormant and unrevived.

A motion was leveled at the response to strike therefrom the allegation relating to dormancy of the judgment and the allegation of satisfaction by profit made from the subsequent sale of the property for the reason that same stated no defense to the motion to expunge from the record the satisfaction and release of judgment. This motion to strike was by the court overruled.

Upon a hearing on the application to expunge, the Commissioners of the Land Office offered their testimony. Demurrer thereto was sustained on the sole ground, so said the trial court, that the judgment was dormant and the application was dismissed.

If the dormancy statute is one of limitation, it does not apply to the state acting in its sovereign capacity in the enforcement of a public right. That the state was so acting in this instance there can be no doubt. This is conceded.

On January 31, 1931, the "Satisfaction and Release of Judgment" was filed in the office of the court clerk of Sequoyah county and duly entered on the judgment docket in cause No. 5660. This instrument was executed by George E. Merritt, attorney of record for the Commissioners of the Land Office, pursuant to authority and direction contained in a resolution adopted by said Commissioners at a meeting held December 29, 1930.

By the pleadings of the defendants, the records submitted to us and relied upon by the parties and the assertions of the defendants here, it is conclusively shown that the release relied upon by the defendants as valid was executed and filed about one year after the entry of the final judgment in question; that the release was executed upon the consideration therein stated and no other; that the judgment has not been paid in full in money; that no execution ever issued and no attempt was ever made to revive same; that more than six years have expired since the entry of the judgment.

There is no contention made by the state that the voluntary act of the parties in entering **the satisfaction and release** of judgment rendered the judg-

ment dormant until the release should be expunged from the record nor did the state plead, nor does it assert here, estoppel against the defendants to assert and rely upon the dormancy of the judgment. It should also be noted that the state does not contend here, though it no doubt did in the trial court, that the plea of dormancy is not germane to the issue tendered and is so inconsistent with the asserted plea of validity of the release that inclusion of the latter contention necessarily excludes the other. The state now concedes the relevancy and materiality of the plea of dormancy and asks us to sustain its contention that the dormancy statute is a true statute of limitation.

Officers can only exercise the authority vested in them. (Const. art. 5, sec. 53; Shaw v. Grumbine, 137 Okla. 95, 278 P. 311.) The Commissioners of the Land Office are authorized to make loans from the school fund and to collect the obligation made to the state in consideration thereof only in the manner prescribed by law. Such judgments of the state may not be released otherwise than upon payment. The release is wholly invalid and so shows on its face. Motion to expunge being proper procedure to rid the record of an unauthorized release (Sneary v. Nichols, 70 Okla. 133, 173 P. 366), it follows that the application to expunge the release from the record should have been sustained.

The dormancy statute is procedural and binding on all judgment creditors. Custer v. McCutchen, 283 U. S. 514, 75 L. Ed. 1239.

The statutory revivor of dormant judgments is not the only remedy open to the state where its judgments are dormant. (Jones v. Nye, 56 Okla. 578, 156 P. 332.) A suit may be prosecuted for a new judgment based upon a dormant judgment. (Jones v. Nye, supra; Custer v. McCutchen, supra; 31 Am. Jur. 842.)

Reversed, with directions to expunge the satisfaction and release.

RILEY, OSBORN, BAYLESS, and WELCH, JJ., concur. HURST, V.C.J., concurs in result but dissents to paragraph 4 of the syllabus, on authority of State v. Dixon, 90 Kan. 594, 135 P. 538, 47 L.R.A. (N.S.) 905. CORN, J., concurs in result. GIBSON, C. J., dissents.

GIBSON, C. J. (dissenting). The record in this case discloses that the only question presented to and decided by the trial court was whether the statute relating to the dormancy of judgments applies to and is binding upon the state.

The trial court held that the judgment was dormant and that the state was bound by the statute.

On appeal the same single question is presented to us.

In paragraph 4 of the syllabus the majority opinion holds:

"The dormancy statute (12 O.S. 1941 § 735) is procedural and judgments in favor of the state ordinarily become dormant if execution is not sued out as provided therein."

Thus the only question presented is decided contrary to the contentions of the plaintiff in error. This affirms the only judgment entered by the trial court. With so much of the opinion I agree. But the majority opinion goes beyond the single issue presented and upon an assumed state of facts adjudicates issues injected into the case by this court adversely to the defendant in error, without his having had his day in court.

I do not think we should exercise this power, even if we have it, and I therefore dissent.

———

HURST, V.C.J. (dissenting in part). I dissent to paragraph 4 of the syllabus and that part of the opinion holding that the judgment has become dormant and that execution cannot issue until after it has been revived.

There are two rules of law that are being confused: (1) The rule that, in prosecuting or defending suits, procedural statutes setting up rules for pleading and practice apply to the state as well as to private litigants unless the statutes provide otherwise (49 Am. Jur. 295-297; 59 C.J. 328-330); and (2) the rule that the public rights, titles, interests or prerogatives of the state will not be lost or limited by reason of the laches of its officers, and that with respect to such rights the state is not to be considered as being within the purview of a statute, however general and comprehensive the language of the statute may be, unless it is expressly named or is included by necessary implication. White v. State, 50 Okla. 97, 150 P. 716; Morris v. State, 88 Okla. 189, 212 P. 588; State v. Friar, 165 Okla. 145, 25 P. 2d 620; 49 Am. Jur. 235, 236, 297, 299.

The majority takes the view that the first rule is the one that applies here. I think the second is the one that is applicable.

The second rule obtained under the English common law (49 Am. Jur. 235), and is, by 12 O.S. 1941 § 2, put in force in Oklahoma. It is by reason of this rule that the statute of limitations does not ordinarily apply to the state and its municipal subdivisions when public rights are involved. 25 R.C.L. 410; 34 Am. Jur. 300; 37 C.J. 710; State v. Hall, 191 Okla. 257, 128 P. 2d 838. It was under this rule that it was held in an early English case (Anonymous, 2 Salk 603) that "in the case of the King there need not be any scire facias after the year." The writ of scire facias was used in England to revive a judgment when the time within which execution might have issued had passed. 47 Am. Jur. 466, 471; 56 C.J. 869. Our revivorship statutes serve the same purpose and have rendered that writ largely obsolete. The English rule stated in 2 Salk 603, above, has been followed in several states of the Union. See annotations in 47 L.R.A. (N.S.) 905; 118 A. L.R. 929. As is pointed out in some of the cases discussed in these annotations, the rule has been abrogated in some of the states by statute either expressly or by clear implication.

The courts do not always distinguish between the statute of limitations and the dormancy statute. In fact, they occasionally refer to the dormancy statute as a statute of limitations. See Beadles v. Fry, 15 Okla. 428, 82 P. 1041, 2 L.R.A. (N.S.) 855; Josselyn v. Stone, 28 Miss. 753. The two statutes are analogous. The one is a limitation on actions while the other is a limitation on judgments. The one relates to the commencement of actions, so that if an action is not commenced in time it is barred. The other relates to the life of judgments, so that if execution is not sued out in time it becomes dormant, and it must be timely revived before execution can issue. In common parlance both actions and judgments are said to be "outlawed" after the statutory period has run. Each statute relates to the laches or neglect of the plaintiff or the judgment creditor, as the case may be, to act timely. Both are found in the Code of Civil Procedure. Both are silent on the question of whether they apply to the state. It would seem that if the one does not apply to the state in regard to its sovereign rights, neither should the other.

Thus, in White v. State, above, we held that the statute of limitations does not run against the state for the reason that "the ground on which this doctrine rests is the great principle of public policy that the public interests shall not be prejudiced by the negligence of public officers, to whose care they are consigned." And in Morris v. State, above, we held that the state on relation of the Bank Commissioner was not required to make a replevin bond when suing to recover personal property secured by a mortgage in favor of a failed bank. We said:

"There is nothing in this section of the statute indicating that it was the legislative intent to extend its provisions to the state, and the general rule

is that the state is not bound by the provisions of a general statute, where the effect of such statute would be *to restrict the rights of the state, to affect its interests, or to impose liabilities upon it,* unless it is named expressly or by necessary implication. (Citing cases from 13 states, including Josselyn v. Stone, above.) This rule, which is of ancient origin and based upon the idea that the king is not bound by a statute unless named in it, has been extended so as to apply to our national and state governments. The reason for applying the rule in a representative government is equally cogent as in a kingly government, and stands on the same grounds of expediency and public convenience .. The presumption obtains that it was the legislative intent to exclude the state from the operation of a statute unless the contrary clearly appears, this for the reason that laws are ordinarily made for the government of citizens and not of the state. (Citing cases.)

"No reason is perceived why this rule should not apply to the case at bar." (Emphasis ours.)

I see no reason why, if this rule applies in a suit to recover property claimed by the Bank Commissioner in trust for the depositors, it should not apply to the case before us involving trust funds belonging to the state in its sovereign capacity. Nor do I see any reason why the state should be required to revive the judgment either by a motion to revive or by an independent action, before execution can issue. The *right* to have execution issued to collect the judgment was secured when the judgment was rendered. Of course, the steps leading up to the securing of that right were procedural and the state was required to follow the procedure outlined by the statutes. And in issuing the execution and making the levy, sale and return, and in securing confirmation the state must follow the procedure outlined. Those are all procedural steps. But, the *right* to have the execution issued is no more procedural than is the *right* to sue.