Dear Representative Askins,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. In compliance with their duties as charged under Article XI of the Oklahoma Constitution, the provisions of Title 64 of the Oklahoma Statutes, and their common law duties as trustees to obtain the maximum benefit in return from the use of trust property, are the Commissioners of the Land Office authorized to reduce the amount of agricultural lease payments during the term of an existing lease agreement?
 2. Does the answer to Question One depend on certain conditions or requirements being met before the lease payments are reduced, such as reappraisal of the trust land?
 I. Nature Of The School Land Trust And Oklahoma's Acceptance Of The Trust Property
¶ 1 In 1906, Congress passed the Oklahoma Enabling Act, providing that upon admission of the State of Oklahoma into the Union, certain property and monies would be granted by the federal government to the new State to be held in trust for the use and benefit of schools, universities and other public institutions. Oklahoma Enabling Act, ch. 3335, §§ 7-12,34 Stat. 267, 272-75 (1906). The people of the State of Oklahoma, in adopting the State Constitution, accepted the lands granted to them in the Enabling Act and pledged to use them for the purposes for which they were granted:
 The State hereby accepts all grants of land and donations of money made by the United States under the provisions of the Enabling Act . . . for the uses and purposes and upon the conditions, and under the limitations for which the same are granted or donated; and the faith of the State is hereby pledged to preserve such lands and moneys and all moneys derived from the sale of any of said lands as a sacred trust, and to keep the same for the uses and purposes for which they were granted or donated.
Okla. Const. art. XI, § 1 (emphasis added).
¶ 2 The Constitution established the Commissioners of the Land Office ("Commissioners"), composed of the Governor, Lieutenant Governor, State Auditor, Superintendent of Public Instruction and the President of the Board of Agriculture, to act as trustees for the State in administering the lands and funds. Okla. Const. art. VI, § 32(A). The Constitution makes clear that the educational institutions are the beneficiaries of the land, and the Commissioners' duty is to these public institutions. Okla. Const. art. XI, § 1. The Commissioners have charge of the "sale, rental, disposal and managing of the school lands and other public lands of the state," and of the funds and proceeds derived from the lands, under rules and regulations to be prescribed by the legislature. Okla. Const. art. VI, § 32(A); see also State exrel. Land Office Comm'rs v. Wall, 232 P.2d 940, 943 (Okla. 1951).
¶ 3 You first ask whether the Commissioners are authorized to reduce the amount of agricultural lease payments during the term of an existing lease agreement. Your question is based on a situation where farmers in the panhandle of Oklahoma are experiencing the effects of a severe drought which has prevented them from grazing a full number of cattle on lease land. The Commissioners propose to issue a partial rebate of the 2002 grassland rental on certain leases, based on observing the management of the lease including the size or utility of the pasture, type of livestock, amount of rainfall in the area and time, and stocking rates used during the year. Your question involves an analysis of the Commissioners' duty as trustees of sacred trust land.
 II. Constitutional And Statutory Provisions Regarding The Lease Of School Trust Land
¶ 4 Sections 7, 9 and 10 of the Enabling Act speak to the sale, investment and lease of land granted to the State for the use and benefit of the common schools. The Act allows for certain land to be leased for a period of not more than five years under "such rules and regulations as the legislature shall prescribe." Oklahoma Enabling Act, ch. 3335, § 10, 34 Stat. 274 (1906).
¶ 5 In 1956, the Oklahoma Supreme Court discussed the power of the Enabling Act regulations and stated that they "exist as valid laws of the United States, which may not be modified, restricted or changed by an Act of the Oklahoma Legislature or the people of Oklahoma in amendment of the Oklahoma Constitution." State v.Comm'rs of the Land Office, 301 P.2d 655, 659 (Okla. 1956). This principle was reiterated in Oklahoma Education Associationv. Nigh, 642 P.2d 230 (Okla. 1982), where the court, acknowledging the gift of sacred trust land granted by the Enabling Act and accepted by the Constitution, held:
 No Act of the Legislature can validly alter, modify or diminish the State's duty as Trustee of the school land trust to administer it in a manner most beneficial to the trust estate and in a manner which obtains the maximum benefit in return from the use of trust property or loan of trust funds.
Id. at 236. In Nigh, the Commissioners had sought to subsidize farmers by providing low-interest mortgage loans of trust funds to farmers and ranchers. The Legislature had passed certain statutes which benefitted farmers. Id. at 235. Two of the statutes established maximum rents which the Commissioners could charge when leasing preference right land. Two statutes limited the amount of interest which the Commissioners could charge in making farm loans and when selling trust property, and another established a preference right to re-lease trust lands requiring the Commissioners, when the land was to be re-leased, to award the lease to the current lessee if he had "in good faith complied with the requirements of his existing lease without requiring the current lessee to exceed or match other bids."Id.
¶ 6 In striking down the five statutes as unconstitutional, the court held that the statutes served only one purpose — that of subsidizing farmers and ranching operations — and stated that "[j]ust as a State may not use school land trust funds assets to subsidize its highway construction program, a State may not use school land trust assets to subsidize farming and ranching."Nigh, 642 P.2d at 236. The court held that, while Article XI, Section 6 gave a preference in investing in farm lands, the constitutional provision did not provide that, "in addition to the preference, farmers and ranchers are to be given rental discounts, or, because of the preference, they should be able to borrow trust funds at below market interest rates." Id. at 238.
¶ 7 Similarly, no constitutional or statutory provisions authorize giving rebates or rental deductions to farmers based on drought conditions. The Oklahoma Constitution specifically authorizes the Commissioners to grant commercial and agriculture leases of sacred trust property. Okla. Const. art. XI, § 7. Oklahoma statutes also authorize such leases at 64 O.S. 2001, §101[64-101], providing that "[a]gricultural leases of trust property shall be limited to a maximum of five (5) years and shall be by public bidding at not less than fair market value." Id. § 101(A).
¶ 8 The statutes establish specific procedures for the lease of school land. Title 64 O.S. 2001, § 86[64-86] provides that non-preference right lease lands may be leased by the Commissioners for a period not to exceed five years. That statute also provides for making improvements on lease lands as follows:
 In the event it becomes necessary to repair existing improvements or construct additional or new improvements on nonpreference right lease lands in order to obtain more desirable tenants the Commissioners of the Land Office may, in their discretion, grant a preference right lease on such lands in favor of the tenant who makes such repairs or improvements; provided, however, in all cases, if the nonpreference right lease lands are improved, such tenant shall be required to make payment in cash to the Commissioners of the Land Office for the appraised value of such improvements before a preference right lease can be issued.
Id.
While these provisions authorize leasing and establish procedures for making improvements, they do not authorize rental rebates or reductions during the terms of an existing lease.
 III. The Contracts For The Lease Of Agricultural Land
¶ 9 In accordance with Oklahoma law the Commissioners of the Land Office, as administrators of the sacred Oklahoma School Land Trust, have entered into leases of trust property for agricultural and/or grazing purposes. These leases are generally for maximum five-year terms, and rental rates are determined at public bidding at not less than market value. Okla. Const. art. XI, § 7. A minimum acceptable bid is advertised and the contracts are awarded upon approval of the Commissioners to the person bidding the highest annual cash rental. 64 O.S. 2001, § 101[64-101].
The "Invitation To Bid at Public Auction" sets forth the terms of the bids and is incorporated and made a part of the contract. Oklahoma School Land Trust Surface Agricultural Lease Contract, II Reservations, 2.3 Invitation To Bid, p. 2 (photocopy on file with Commissioners of the Land Office). An appraisal of the property is also included as part of the bidding process.
¶ 10 The lease contracts specifically state that they are binding when signed and approved by all parties. Id. at p. 1. The contract provides that the lessees are to conserve and preserve trust lands (id. at IV Conservation of Trust Lands, 4.1 Conservation, p. 4) and to operate the lease according to certain conditions regarding crop management, grazing, pasture, erosion, repairs, soil conservation and other factors. Id. at 4.3.1 Crop Management. Certain contractual conditions exist, among them a provision that the "[l]essee can not be released from contract obligations except as provided by this contract or according to law. Debt can not be reduced or canceled without full payment pursuant to Constitution and laws." Id. at III Conditions, 3.1 Permanent Contract Obligations, p. 3. Rent on the five-year lease is to be paid annually and all unpaid rent or monies bear interest at sixteen percent (16%) per year. Id. at 3.2 Payment, Bond, Non-payment. If the annual rent is not paid within ninety (90) days of the due date, adequate bond or other security acceptable to the Commissioners must be provided. Id.
¶ 11 The lease contracts make clear that the lease shall be interpreted in accordance with the laws of the State of Oklahoma.Id. at II Reservations, 2.1 Interpretation, Venue, Trust Obligation, p. 2. The contracts also recognize the Commissioners' paramount duty to maximize returns by providing "[t]erms and conditions of the lease contract shall be construed in favor of CLO as part consideration for this lease and in recognition of the obligation CLO has to protect Trust assets while maximizing economic return." Id. A specific section entitled "2.2 LEGAL SUBORDINATION" provides:
 This lease will be subordinate to and Lessee will comply with laws, Court Orders, policies, procedures and rules, existing and future, relative to the operation and management of the Oklahoma School Land Trust.
Id. p. 2.
With respect to grazing, under IV Conservation of Trust Lands, the contract provides as follows:
 4.3.2 GRAZING. Grazing of native grasslands shall be managed so desirable species of grasses and forbs are not overgrazed or depleted. An annual stocking rate of ___ Animal Units, or its equivalent, is indicated for this lease. Animal stocking rate shall be reduced immediately as directed by CLO. A brush and weed control program shall be developed and implemented for each lease as required by CLO.
Id. p. 5.
¶ 12 The contracts provide that the Commissioners may direct that the stocking rate be reduced, yet provide for no reduction in the terms of the lease should the stocking rate be reduced. As noted above, specific contractual terms provide that the lessee cannot be released from contractual obligations except as provided by the contracts, and that debt cannot be reduced or cancelled without full payment. Id. at III Conditions, 3.1 Permanent Contract Obligations, p. 3. To interpret the lease to provide for a rebate of a portion of the lease amount should grazing be reduced would be contrary to the clear terms of the instrument. The Oklahoma Supreme Court has held that leases are contracts and the usual rules for the interpretations of contractual writings apply to them. Osprey L.L.C. v. Kelly-MoorePaint Co., 984 P.2d 194, 198 (Okla. 1999). Language in a contract is given its plain and ordinary meaning, unless some technical term is used in a manner meant to convey a specific technical concept. Id. The lease provision covering grazing is not ambiguous. It provides the Commissioners the right at any time to reduce grazing, but does not provide that such reduction changes the payment terms of the lease. Lease Contract, IV Conservation of Trust Lands, 4.3.2 Grazing, p. 5. Similarly, other unambiguous provisions of the lease contracts recognize the duty of the Commissioners to maximize economic return for the trust beneficiaries.
¶ 13 A March 16, 1953 Attorney General Opinion to the Honorable Thomas J. Lee, Secretary of the Commissioners of the Land Office, addressed a similar issue. The question asked in that Opinion was whether an original lease contract could be rescinded by the Commissioners of the Land Office at the request of the lessee so that the Commissioners could enter into a new lease with the lessee at a rental less than the amount stated in the original lease. The question was asked in 1953, during a time of severe drought and a decline in the cattle market in Oklahoma. Relying on opinions from the Oklahoma Supreme Court, the Attorney General Opinion stated:
 An examination of the leases in question show [sic] that the lessees contracted to pay but one amount of money for the use and occupancy of the leased premises, to wit, the full amount of the rent for the five-year period. That amount became and is an entire obligation, payable however in five annual installments. By the execution of the lease and the taking possession of the leased premises, the lessee became liable for the full amount of the rent for the five-year period, and that amount has now become a fixed obligation, payable as provided by the lease, and should the lessee abandon the premises and fail to occupy it for the remainder of the period, he would still be legally liable for the full amount of the obligation. It is therefore clear that such an obligation would come within the purview of the decision of the Court in State ex rel. Comm'rs of the Land Office v. Weems, et al, 197 Okla. 106, 168 P.2d 629. . . .
Id. at 3.
There have been no significant changes in the law since the issuance of this Opinion, and the conclusion that the lessee remains liable for the full amount of the lease remains the same today as in 1953.
¶ 14 The lease contract also provides that the "lease document contains the complete agreement between the parties; any changes to the lease must be agreed to and approved in writing by the parties." Lease Contract, at V Remedies, 5.2 Bind, Benefit, Complete Agreement, Changes, p. 6. No changes to the current leases have been "agreed to and approved in writing by the parties." Id. Whether an agreed alteration of the terms could be made that would be consistent with the purpose of maximizing returns for the trust is a question of fact which cannot be answered in an Attorney General Opinion. 74 O.S. 2001, §18[74-18] (b)(A)(5). It is important to recognize, however, that any potential alteration in the contract terms must demonstrate that such a change in terms would maximize returns for the land rather than subsidize farmers.
 IV. Reappraisal Of The School Trust Land
¶ 15 You also ask whether the answer to Question One depends on certain conditions being met, such as reappraisal of the trust land. There are instances where reappraisal of the trust land would be in order. The Enabling Act specifically provides that before any lease land is to be sold, the lands and the improvements on those lands shall be appraised by three disinterested appraisers who shall make a separate appraisement of the lands and the improvements. Oklahoma Enabling Act, ch. 3335, § 10, 34 Stat. 267, 274 (1906). The statutory provisions governing school trust land also allow for an appraisal in specific instances. 64 O.S. 2001, § 194[64-194].
¶ 16 However, where a lease has been entered into for a specific term of years with no provision for a reduction in the lease terms, the parties are bound by the contract, and an appraisal of the land at a lower rate would have no legal significance. Thus, in answer to your second question, as the lease payments may not be reduced during the term of the lease, the answer to your first question does not depend on certain conditions or requirements such as reappraisal being met.
 V. Conclusion
¶ 17 The land for schools is held in a sacred trust and the primary purpose of the School Land Trust, administered by the Commissioners of the Land Office, is to produce income for the benefit of common schools and other beneficiaries in Oklahoma.Nigh, 642 P.2d at 235-36. The Commissioners of the Land Office as trustees owe their undivided loyalty to the beneficiaries of the trust, and are to "manage the trust estate for the exclusive benefit of the beneficiaries, and return full value from the use and disposition of the trust property." Id. at 235. A reduction in lease rates for lessees during the terms of an existing lease in areas affected by drought conditions, does not fulfill the purpose of maintaining the maximum return to the trust estate for the property under the control of the Commissioners of the Land Office.
¶ 18 It is, therefore, the official Opinion of the AttorneyGeneral that:
1. The Commissioners of the Land Office, as trustees of sacredtrust land, are entrusted with the responsibility of obtainingthe maximum value for school trust land under their control.Okla. Educ. Ass'n v. Nigh, 642 P.2d 230, 235-36 (Okla.1982). Current leases provide for a specific rental rate to bepaid for a term of years and provide that the Commissioners mayorder that grazing be reduced on lease land. See OklahomaSchool Land Trust Surface Agricultural Lease Contract, IVConservation of Trust Lands, 4.3.2 Grazing, p. 5 (photocopy onfile with Commissioners of the Land Office). The leases alsostate that the terms and conditions of the lease contract shallbe construed in favor of the Commissioners in recognition oftheir obligation to protect trust assets while maximizingeconomic return. Id. at III Conditions, 3.1 PermanentContract Obligations, p. 3. The leases do not provide for givingrebates to farmers who reduce the amount of grazing, and suchrebates are inconsistent with obtaining the maximum return fortrust property.
 2. The Oklahoma Constitution provides at Article XI, § 7, andthe legislature has provided at 64 O.S. 2001, § 101[64-101], that theCommissioners of the Land Office may grant agricultural leases intrust property for a maximum of five years. The leases shall be"at not less than fair market value." Id. No constitutionalor statutory provision authorizes the Commissioners to issuerebates to farmers during the terms of an agricultural lease.
 3. As there is no authority for issuing rebates during theterms of an existing lease, any rebates or reduction of leasepayments would not depend on certain conditions, such asreappraisal of the trust land.
W.A. DREW EDMONDSON Attorney General of Oklahoma
SANDRA D. HOWARD Senior Assistant Attorney General