STATE of Oklahoma, ex rel. BOARD OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY, Plaintiff-Appellant,

v.

Fred A. SHELTON, Henry Peak, Marshall Greenman, Charles Ray, Joe Swank, James Joseph Skipper, Jack Ford, Muskogee Equipment and Supply Company, Inc., Eastern Equipment Company, Inc., Port City Road Supply Company, S & S Supply Company, Inc., and Ford Supply Company, Defendants-Appellees.

STATE of Oklahoma, ex rel. BOARD OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY, Plaintiff-Appellant,

v.

Eddie B. FRENCH, Henry Peak, Marshall Greenman, Charles Ray, Joe Swank, James Joseph Skipper, Hershell Long, Muskogee Equipment and Supply Company, Inc., Eastern Equipment Company, Inc., Port City Road Supply Company, S & S Supply Company, Inc., and Morris Equipment Company, Defendants-Appellees.

STATE of Oklahoma, ex rel. BOARD OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY, Plaintiff-Appellant,

v.

Kenneth E. WARD, Henry Peak, Marshall Greenman, Charles Ray, Joe Swank, James Joseph Skipper, Hershell Long, Jack Ford, Muskogee Equipment and Supply Company, Inc., Eastern Equipment Company, Inc., Port City Road Supply Company, S & S Supply Company, Inc., Morris Equipment Company and Ford Supply Company, Defendants-Appellees.

STATE of Oklahoma, ex rel. BOARD OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY, Plaintiff-Appellant,

v.

Jesse V. SMITH, Henry Peak, Marshall Greenman, Charles Ray, Joe Swank, James Joseph Skipper, Hershell Long, Jack Ford, Muskogee Equipment and Supply Company, Inc., Eastern Equip-

ment Company, Inc., Port City Road Supply Company, S & S Supply Company, Inc., Morris Equipment Company and Ford Supply Company, Defendants-Appellees.

No. 64147.

Court of Appeals of Oklahoma, Division Nos. 2 and 4.

June 10, 1986.

Rehearings Denied Aug. 4, 1986.

Certiorari Denied Oct. 21, 1986.

**104**

Norman D. Thygesen, Asst. Dist. Atty., Muskogee, for plaintiff-appellant.

Jon Tom Staton, Mike Norman, Muskogee, for defendants-appellees Shelton and French.

Bill Settle, Muskogee, for defendant-appellee Ward.

Julian K. Fite, Muskogee, for defendant-appellee Smith.

Lloyd Payton, Muskogee, for defendant-appellee Eastern Equipment Co.

Stephen J. Scherer, Muskogee, for defendant-appellee Hershell Long, d/b/a Morris Equipment Co.

Henry Peak, pro se.

BRIGHTMIRE, Presiding Judge.

The issue for review is whether a statute of limitations has run against four state actions consolidated for this appeal. The trial court, without saying so, evidently concluded one had and dismissed all of the actions.

We hold, however, that none of the actions is barred by a statute of limitations and vacate the orders of dismissal.

I

These actions were filed by the district attorney for Muskogee County on September 17, 1984, to recover public monies paid by or to defendants pursuant to contracts said to be induced by bribes, laced with kickbacks and executed pursuant to an ongoing conspiratorial scheme to fraudulently divert public funds and convert public property to defendants' private use between 1970 and 1981.[1] The government set out a schedule of the various sales contracts complained of and asked for judgments against the defendants in the aggregate amount of $2,808,925.62—a sum double the facial amount of the scheduled illegal agreements, the recovery of which is authorized by 62 O.S.1981 § 372.[2] The defendants are former Muskogee County Commissioners and various material, equipment and service vendors with whom they corruptly conspired. Each of the named commissioners was convicted of or pleaded guilty to felonious violations of various federal anti-corruption laws involving the same transactions that form the foundation for these lawsuits.

■ Only two defendants filed an answer—Eastern Equipment Company and Kenneth Ward—and the closest they came to raising the statute of limitations as a defense was with this language: "the court is without *jurisdiction* for the reason that said suit has not been timely filed against this Defendant." (Emphasis added.) Six defendants filed motions to dismiss on the

---

1. A separate action was filed by the state against each former county commissioner involved. The defending parties are as follows:

     Case No. C–84–1190 is against former commissioner Fred A. Shelton and the following vendors: Henry Peak, Marshall Greenman, Charles Ray, Joe Swank, James J. Skipper, Jack Ford, Muskogee Equipment and Supply Co., Inc., Eastern Equipment Co., Port City Road Supply Co., S & S Supply Co., and Ford Supply Co.

     Case No. C–84–1191 is against former commissioner Eddie B. French and the following vendors: All those named in Case No. C–84–1190, except Jack Ford and Ford Supply Co.,

plus additional defendants Hershell Long and Morris Equipment Co.

     Case No. C–84–1192 is against former commissioner Kenneth E. Ward and the following vendors: All those named in Case No. C–84–1190 plus Hershell Long and Morris Equipment Co.

     Case No. C–84–1193 is against former commissioner Jesse V. Smith and his vendors: All those named in Case No. C–84–1190 plus Hershell Long and Morris Equipment Co.

2. This statute was amended in 1982 to provide for the recovery of "triple the amount of ... money" fraudulently paid out and "triple the value of property" fraudulently transferred.

ground the action against them, based as it was on the penal provisions of 62 O.S.1981 § 372, was barred by the one-year provision of 12 O.S.1981 § 95 (Fourth) and in any event the two-year limit of 12 O.S.1981 § 95 (Third). Nine of the defendants did not file an answer or a motion to dismiss, or otherwise raise a limitations defense.[3]

A journal entry recited that on February 13, 1984, "all motions pending" came on for hearing before a specially assigned judge. It further stated that "from testimony given, and arguments of counsel and cited authorities, it is the order of the court ... that the above cases [all four] are hereby dismissed." That's all. The journal entry reflects no findings of fact or any conclusions of law. We can presume, however, that the basis for the adjudication was the one stated in defendants' motions to dismiss and argued in support of them— namely, that a statute of limitations had run against the government's actions at the time they were filed. And the actions were dismissed against all defendants whether a defendant had raised the limitations defense or not.

The plaintiff appeals contending it is proceeding in its sovereign capacity to enforce and protect a public right and is therefore immune from the operation of any statute of limitations. Alternatively, the state argues that in any event no statute of limitations began to run until plaintiff, with the use of diligence, could or should have known of and had access to evidence of facts necessary to prove the essential elements of the causes of actions in question. And in this case, says plaintiff, because of the unrecorded and secret nature of defendants' illicit activity, it could not have acquired such knowledge, even if it had investigated with reasonable diligence, until defendants either publicly admitted or were convicted of the criminal acts in question. While we consider this alternative argument correct and sound, it will not be

necessary to pursue it because of our view of plaintiff's first contention.[4]

## II

The question we address, then, is whether the facts pleaded in the government's petitions justify the trial court's presumed conclusionary finding that the sovereign is not immune from the restraints of the statute of limitations.

Defendants concede that the ancient common law doctrine of "Nullum tempus occurrit regi" (lapse of time does not bar the king's right [to sue]) has been judicially accepted in principle by the courts of this country with this variation in the sophisticated Latin phraseology: "Nullum tempus occurrit reipublicae" (no lapse of time bars the right of sovereign governments [to sue]). Defendants also agree that the concept's application extends to both state and local governments with regard to "public rights of all kinds," by quoting confirmatory language in *Foote v. Town of Watonga*, 37 Okl. 43, 130 P. 597 (1913). *See also Herndon v. Board of Commissioners*, 158 Okl. 14, 11 P.2d 939 (1932).

But after acknowledging the import of *Foote* defendants turn to and lean heavily on a decision that came down two years later—*Board of County Commissioners v. Willett*, 49 Okl. 254, 152 P. 365 (1915)—for the proposition that the right which the county is seeking to protect here is a "private" one. In *Willett*, the court considered whether a county could recover sums of money illegally paid to a county attorney in the form of a salary for over three years. The official's annual salary was $1250 and he was overpaid $337.50 during calendar year 1908, $100 during 1909 and $100 in 1910. Suit was filed August 3, 1912. The opinion does not disclose why the overpayment occurred but evidently no fraud was alleged because no penalty was sought under the provision of Rev.Laws 1903 § 5900, now 62 O.S.1981 § 372. The trial

---

**3.** We note in passing the obvious lack of judicial propriety in dismissing actions against defendants who have in no way challenged them.

**4.** 12 O.S.1981 § 95 (Third) specifies a limitation period of two years for "an action for relief on the ground of fraud—the cause of action in such

case shall not be deemed to have accrued until the discovery of the fraud." For application see, for example, *Brookshire v. Burkhart*, 141 Okl. 1, 283 P. 571, 67 ALR 1059 (1929); and *Clover v. Neely*, 116 Okl. 155, 243 P. 758 (1926).

court sustained defendant's demurrers to all three "causes of action" plaintiff pleaded—one for each year involved—on the ground they were barred by the three-year statute of limitations set out in Rev.Laws 1910 § 4657, now 12 O.S.1981 § 95 (Second), prescribed for "An action upon a contract express or implied not in writing...." · and the county appealed.

The appellate court reversed as to the 1909 and 1910 causes but affirmed as to the 1908 cause. In so ruling the upper court rejected the county's contention that a public right was being asserted by reason of which the government was immune from any limitations bar. In its opinion the *Willett* court starts right out with a crucial primal conclusion—that the "right, which is sought to be enforced [by the county], is a *private* right for the reason that all the people of the state have no interest in the funds of the county illegally paid out and sought thereby to be recovered, but only that part of the public within the confines of the county are interested in the funds." (Emphasis added). The court then began to quote from various cases across the country and a treatise—*J. Dillon, Commentaries on the Law of Municipal Corporations* (5th ed., 1911)—in an effort to clarify the seemingly unclarifiable, namely, the distinction between and the meaning of "private" rights of municipalities and their "public" rights. *Foote* was recognized, approved but then ignored. And to support its private right predilection the *Willett* court turned to an early Indiana case and an old Virginia decision, each of which had used the private right terminology as a vehicle for reaching the ultimate conclusion that a county enjoyed no sovereign immunity from statutes of limitation in seeking to enforce "private" rights.

There are at least three significant reasons why *Willett* affords no precedential

help in resolving the issue in this case. First of all, *Willett* was not a § 372 action such as we have here and the court treated it as an action on an oral contract—a theory of recovery entirely different from the tort action in this case.

The second reason is that regardless of whatever validity *Willett*'s underlying criterion may have had in 1915—that overpayment of county officials' salaries is a matter of only local interest primarily because "all the people of the state have no interest in the funds of the county illegally paid out...."—it has long since perished. Today county government, and particularly its road system, is financed in a large part by state funds appropriated by the state legislature. The result is, then, that all the people in the state now have an interest in the honest and proper handling of those funds by county governments.[5]

The third reason is that since 1915 the high court of this state has reassessed and to some extent clarified its position with regard to the tangled and controversial "private" versus "public" right approach to resolving the problem of whether statutes of limitation bar actions by sovereign governments. This it has done mainly by enlarging on the attributes and inherent nature of a public right. An examination of more recent decisions demonstrates that not only has the "private right" ideology of *Willett* come under judicial attack but the courts' perception of "public right" has developed to the point of being more realistic and workable in terms of modern social and economic conditions.

In 1940, for instance, the supreme court of this state, in *Board of County Commissioners v. Good Township*, 188 Okl. 151, 107 P.2d 805, manifested a skepticism about what it referred to as the "so-called private right" theory as it pertained to county government, and associated the des-

---

5. State financing of county government began in the 1920's and has grown to the point that today the state finances district attorneys' offices, county jail construction, county schools, county roads and airports, and county offices of various posts, to name but a few. *See e.g.,* Title 3 O.S.Supp.1984 § 256; 3A O.S.Supp.1983 § 207; 19 O.S.Supp.1983 § 215.37I; 29 O.S.1981 § 5–402; 37 O.S.Supp.1985 § 563; 47 O.S.Supp. 1985 § 1104; 62 O.S.1981 § 192.1, 204, 491; 62 O.S.Supp.1985 § 193; 63 O.S.Supp.1985 § 804.-14; 68 O.S.1981 §§ 523, 523.1, 706, 1103, 2004, 5104, and 5305; 68 O.S.Supp.1985 §§ 502.2–502.5, 504, 504.1, 519, 602, 604.2–604.5, 704, 707.1, 707.2 and 1004.

ignation with nomenclature earlier judicially devised in connection with municipal tort liability, namely, proprietary versus governmental functions. The *Good* court's rejection of the defendants' contention—that the county's belated action to recover the principal and interest due on some bridge bonds issued by defendant was an attempt to enforce a "private" right which was barred by the statute of limitations—had the effect, incidentally, of repudiating the provincial hypothesis of *Willett.* The *Good* reasoning was that by law the local county sinking funds, which were invested in the township bonds, were in the nature of a public trust and were therefore a public matter and a governmental function. Its idea was that since both creation of the trust and its funding through local taxation were authorized by the state constitution and regulated by state statutes, "the state has manifested a direct interest in such fund, and has adopted a definite policy of action with relation to the creation, the investment and the disbursement thereof," the tax-financed effort is of interest to all state taxpayers, hence a so-called public right. The court stated its legal conclusion this way: where funds "are held for and dedicated to a public use, ... the laxity of the public officials in relation thereto will not deprive the municipality of its right to claim immunity from time limitation."

Finally, the *Good* court made the following instructive and directional observations: "If this court is to continue to recognize a distinction between a public and private right of a political subdivision of the state with reference to the application of the statute of limitations thereto, the distinction when drawn should be bolstered by every reasonable presumption favorable to government immunity from the limitation." For the elusive line separating the "public" and "private" right abstractions, if discernible at all, "is invariably indistinct and uncertain," the court added, and as a consequence such "presumptions should favor the sovereignty of the government and all doubts resolved to the end that all government rights are public rights."

The nature of a public right as perceived by the supreme court has also been dis-closed in decisions involving the illegal expenditure of funds directly from the state treasury. They are helpful because the same diacritical dialectics concerning public versus private rights are used to dispose of the limitations issue as are used in the local government cases. This makes sense, of course, because with regard to official misuse of taxpayers' money, there is no logical basis for differentiating between funds possessed by the state and those possessed by a county. The most recent case on the subject points this up—*State ex rel. Cartwright v. Tidmore,* 674 P.2d 14 (Okl.1983). *Tidmore* dealt with a state contract dispute. While the court did not mention the *Good* case it traveled the same syllogistic highway and reached the same legal destination. Moreover, the court confirmed the universal applicability of its public right concept by saying that the question of "whether the statute of limitations runs against a cause of action ... [possessed by] the *state or a subdivision* ... is determined by whether the right affected is a private right or public right." (Emphasis added.) In *Tidmore* recovery was sought for money paid out of the state treasury pursuant to oral contracts made without competitive bidding as required by law. The court concluded that the state was suing to "vindicate legal rights which are public in nature...." The ultimate effect of the action is to help assure "the rights of the public to have state contracts for services protected by written contracts and competitive bidding" and that "government officials are accountable to the public, and are discharging their duties competently and responsibly."

■ This criteria, when applied to the factual situation in the instant case, prevents escape from the conclusion that the attempt to enforce the provisions of 62 O.S.1981 § 372 against defendants is an attempt to attain an objective consistent with the intent and purpose of § 372, namely, protection of the public's right to be governed by county officials who perform their duties fraudlessly without bribes, kickbacks or payoffs. To further fortify this important and sacred public right from

invasion § 372 provides that those who would debase and corrupt our public officials with tempting venal lures are liable to the state right along with yielding officials. To paraphrase the *Good* court, if there ever existed a law that was more designed to guarantee the public's right to honest government than § 372 we are not aware of it. And as surely as night follows day an action by the state to enforce a statute created to guard and preserve a cherished public right has to in itself be considered a paramount governmental undertaking.

### III

The orders of dismissal are vacated and the causes are reinstated and remanded for further proceedings.

BACON and RAPP, JJ., concur.