The OKLAHOMA CITY MUNICIPAL IM-PROVEMENT AUTHORITY, a public trust, and the trustees thereof, the City of Oklahoma City, a municipal corporation, and the Oklahoma City Municipal Facilities Authority, a public trust, and the trustees thereof, Appellants,

v.

HTB, INC., Interpace Corp., GHA Lock Joint, Inc., P.S.A.T., Inc., Phelps, Spitz, Ammerman & Thomas, Inc., Phelps & Spitz, Inc., Painter & Spitz, Inc., Brooks Collier, Ingram & Spitz, Inc., Frederick J. Spitz, Project Construction Co., the Concho Co., Brewer Construction Co., PCB, a joint venture, and the Benham Group, Inc., RGDC, Inc., LRB & Associates, Inc., and Metro Water Consultants, Appellees.

No. 65517, 65766 to 65768 and 65866.

Supreme Court of Oklahoma.

Dec. 20, 1988.

As Corrected Jan. 5 and Jan. 13, 1989.

As Corrected March 6, 1989.

As Corrected on Denial of Rehearing March 9, 1989.

L. Gene Gist, Sally E. Scott, Chris A. Pearson, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, for appellants Oklahoma City Mun. Imp. Authority.

Craig B. Keith, Diane D. Huckins, Asst. Mun. Counselors, Oklahoma City, for appellants Oklahoma City Mun. Authority and the City of Oklahoma City.

Kenneth McKinney, McKinney, Stringer & Webster, Oklahoma City, for appellees Interpace Corp. and GHA Lock Joint, Inc.

Kent E. Mast, G. Lee Garrett, Jr., Hansell & Post, Atlanta, Ga., for appellees Interpace Corp.

John B. Hayes, Looney, Nichols, Johnson & Hayes, Oklahoma City, for appellees HTB, Inc.

Ben L. Burdick, Arthur F. Hoge, III, Crowe & Dunlevy, Oklahoma City, for appellees PSA & T, Inc. and Spitz, et al.

Don Hamilton, Oklahoma City, for appellee LRB & Associates, Inc.

Ben T. Lampkins, Lampkin, Wolfe & McCaffrey & Tawwater, Oklahoma City, for appellee Metro Water Consultants.

John R. Couch, Hugh A. Baysinger, J. Roger Hurt, Pierce, Couch, Hendrickson, Johnston & Baysinger, Oklahoma City, for defendant Benham Group.

SUMMERS, Justice.

Plaintiffs/appellants[1] seek certiorari to resolve the question of whether statutes of limitation operate to bar their actions for recovery of damages allegedly caused by defendants' negligent design and construction of part of a municipal water system. Although numerous issues were raised before the trial court and the Court of Appeals, and were properly preserved in plaintiffs' petition to this Court, we limit ourselves to the single issue which resolves the matter, and hold that these actions are not barred by statutes of limitation or repose because the plaintiffs at all times pertinent acted in a sovereign capacity to protect vested public rights.[2]

All parties agree that plaintiffs Oklahoma City Municipal Improvement Authority (OCMIA) and Oklahoma City Municipal Facilities Authority (OCMFA) function as public trusts established pursuant to Oklahoma statutes, with the plaintiff City of Oklahoma City (City) as beneficiary. Further, none of the defendants contest the factual statement from plaintiffs that OCMFA is the financing vehicle for public funds used in emergency repairs of the system and also processes and receives federal funds used to construct and maintain the system. The actions below focus upon Phase III of a plan for the extension and improvement of water mains from Lake Stanley Draper to the Oklahoma City Area, with this phase consisting of 8½ miles of pipe stretching from the Draper Lake pumping station to Southeast 29th and Douglas Boulevard. On May 24, 1974 defendants completed work on Phase III and recommended its acceptance. Between July 10 and October 8, 1974 OCMIA and the City accepted Phase III as formally complete. We need not determine the precise date of completion and recognize only that the earliest acceptance date mentioned falls precisely ten years before plaintiffs

---

1. Parties will hereinafter be designated as plaintiffs or defendants unless specifically designated by name.

2. The trial court entered numerous findings of fact and conclusions of law which we need not consider. Issues regarding meaning of "improvement" and "substantial completion" in 12

O.S.1981 § 109 become moot issues which this court will not consider. *Edwards v. Hanna Lumber Co.*, 415 P.2d 980 (Okl.1966). Further, since the matter can be resolved on narrower grounds, we will not address the constitutionality of 12 O.S.1981 § 109. *Smith v. Westinghouse*, 732 P.2d 466, 467 (Okl.1987).

filed suit to recover damages for ten breaks in the pipe which breaks began in June 1980. Plaintiffs filed these suits on June 10, 1984.

Defendants, each of whom assumed responsibility for all or some portion of the design and/or construction of Phase III responded to plaintiffs' actions with motions for summary judgment alleging that the statute of repose at 12 O.S.1981 § 109[3] as well as all applicable statutes of limitation bar suit against them. The trial court granted defendants' motions, from which orders plaintiffs appeal.

The Court of Appeals, in a divided opinion affirmed the trial court, finding that operation of a water line does not affect the public generally in that it constitutes a proprietary function of government.[4] We disagree.

Since 1913, this court has followed the general rule that statutes of limitation do not apply to a government entity seeking in its sovereign capacity to vindicate public rights, and "that the maxium, 'nullum tempus occurrit regi,'[5] is not restricted in its application to sovereign states or governments, but that its application extends to and includes public rights of all kinds, and that it applies to municipal corporations as trustees of the rights of the public ..." Foot et al. v. Town of Watonga, 37 Okl. 43, 130 P. 597, 598 (1913). Adoption of the general rule in Foot protected the municipality in a property action in which the town held title to a lot designated for use by the general public. Holding against an estoppel theory, the court ruled that the public's rights stood paramount "no matter how lax the municipal authorities may have been in asserting [them]." Foot 130 P. at 598.

Cases cited by all the parties herein follow and clarify the general rule announced in Foot. These cases focus primarily upon whether the right affected is a public right or private right. Herndon v. Board of Commissioners in and for Pontotoc County, 158 Okl. 14, 11 P.2d 939 (1932); State ex rel. Cartwright v. Tidmore, 674 P.2d 14 (Okl.1983).

In the Herndon decision, this Court held that the trial court properly overruled defendant's demurrer in an action to compel conveyance of land used for the county courthouse, and that the statute of limitations did not apply to bar the county's action. The court stated the general rule and announced that the test to determine the nature of the right affected is "whether the right is such as to affect the public generally or to merely affect a class of individuals within the political subdivision." Id. 11 P.2d at 941.

As an example of a matter involving purely private rights, the Herndon court cited Board of County Commissioners of Woodward County v. Willett, 49 Okl. 254, 152 P. 365 (1915). The court in Willett ruled that the statute of limitations barred the county from recovering excess salary paid to a teacher because the suit affected only private rights "for the reason that the people of the state have no interest in the funds of the county illegally paid out and sought to be recovered, but only that part of the public within the confines of the county are interested in the funds." Id. 152 P. at 365.

In 1986, the Oklahoma Court of Appeals partly distinguished the 1915 Willett scenario from one in which the statute of limitations would not prohibit a county's action to recover monies paid under contracts pursuant to an alleged scheme of

---

**3.** The terms of 12 O.S.1981 § 109 provides:

No action in tort to recover damages
(i) for any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property,
(ii) for injury to property, real or personal, arising out of any such deficiency, or
(iii) for injury to the person or for wrongful death arising out of any such deficiency,

shall be brought against any person owning, leasing, or in possession of such an improvement or performing or furnishing the design, planning, supervision or observation of construction or construction of such an improvement more than ten (10) years after substantial completion of such an improvement.

**4.** 58 OBJ 2515.

**5.** Time does not run against the king.

bribes and kickbacks. *State ex rel. Board of County Commissioners v. Shelton,* 727 P.2d 103 (Okla.App.1986). The Court of Appeals again followed the general rule, and noted that the "court's perception of 'public right' has developed to the point of being more realistic and workable in terms of modern social and economic conditions." *Id.* at 106.

This more realistic perception first appeared in the appeal from an action to recover principal and interest on bonds purchased with monies from a county's sinking fund in which the trial court sustained the defendant's plea to the five year statute of limitations. *Board of County Commissioners of Oklahoma County v. Good Township,* 188 Okl. 151, 107 P.2d 805 (1940). The court found that the funds at issue involved constitutional and statutory provisions which "stamp the investment with a public interest", and that "the distinction [between public and private rights of a political subdivision] should be bolstered by every reasonable presumption favorable to government immunity from the limitation." *Id.* 107 P.2d at 807.

These cases, which announce and clarify the general rule focus either upon property disputes in which the property at issue is held for use by the general public, or situations in which the public through legislative control expresses general concern in the rights at issue. This court's most recent pronouncement regarding governmental immunity from limitations follows the others and upholds the public's right to require compliance with statutory schemes for governmental contracting and bidding. *State ex rel. Cartwright v. Tidmore,* 674 P.2d 14 (Okl.1983).

In *Tidmore,* this Court held that the state's action to recover money paid to defendant under a contract was not barred by the statute of limitations where the state was suing in its sovereign capacity to vindicate legal rights which are public in nature. We reasoned that laws "requiring

competitive bidding and written contracts protect the public at large by promoting economy in government and reducing the likelihood of fraud." *Id.* at 16. We further found that the general rule rests upon sound policy that "public interest shall not be prejudiced by the negligence of public officers to whose care it is consigned." *Id.* at 16.

▇ From these cases we distill the general rule that statutes of limitation shall not bar suit by any government entity acting in its sovereign capacity to vindicate public rights, and that public policy requires that every reasonable presumption favor government immunity from such limitation. In applying this rule to the issue presently before us, we must determine whether plaintiffs below acted in a sovereign capacity, and whether the rights at issue rise to the level of public rights.

▇ Throughout their arguments the defendants misguidedly equate the governmental/proprietary functions applicable to the principle of sovereign immunity *from* liability with the sovereign's capacity *to bring* an action.[6] Some courts in determining whether the sovereign may claim immunity from statutes of limitation have rested their decision upon the function performed. See e.g., *Reeves v. City of Phoenix,* 1 Ariz.App. 157, 400 P.2d 364 (1965). Established principles of Oklahoma law differ, and in making such a determination the Oklahom court has focused not upon the function performed, but the ultimate right at issue. In light of the court's abrogation of the common law doctrine of sovereign immunity[7] and the legislative response thereto which eliminated the distinction between governmental and proprietary functions,[8] we would consider it inappropriate to repudiate the existing test in favor of a new one turning on the governmental versus proprietary function.

None of the litigants contest that the operation of a waterworks is a proprietary

---

6. The sovereign is a juristic person. *Nesbitt v. APCO Oil Corp.,* 569 P.2d 434 (Okl.1977). So too, then are plaintiffs OCMIA and OCMFA as agencies of the state and the city as a political subdivision.

7. *Vanderpool v. State,* 672 P.2d 1153 (Okl.1983).

8. 51 O.S.1984 Supp. § 152.1(A).

function. *Southwestern Light and Power Co. v. Elk City*, 188 Okl. 540, 111 P.2d 820 (1941); *City of Muskogee v. Turner*, 186 Okl. 459, 98 P.2d 1095 (1940). However, the character of the plaintiff's function does not control. We will not attach "controlling importance to the source through which or from which the state acquires the right rather than the nature of the right and whether the failure of its enforcement affects public as distinguished from private enterprise." *State ex rel. Land Commissioners v. Hall*, 191 Okl. 257, 128 P.2d 838 (1942).

In *Hall*, this court ruled that the state acted in its sovereign capacity in a foreclosure action notwithstanding the fact that the state merely derived its capacity to proceed against the grantee under the mortgage assumption clause. This action was not time barred because the "public interests shall not be prejudiced by negligence of public officials to whose care they are consigned." *Id.* 128 P.2d at 841.

 The case before us presents no right as tenuous as the derivative right acquired in *Hall.* Here, the plaintiffs function within the statutory framework of Title 60 of the Oklahoma Statutes in their trustee—beneficiary relationship. The governing statutes provide inter alia that the "trustee, or trustees, under such an instrument or will *shall be an agency of the state* ..." 60 O.S.1981 § 179 (emphasis supplied). Further, dissolution of the public trust requires approval of the governing body of the beneficiary *and the governor.* 60 O.S.1981 § 180(a). Consequently, the plaintiffs OCMIA and OCMFA must bring their actions in a sovereign capacity since their authority to do so emanates from a pervasive statutory scheme which governs all of their activities as agencies of the state. The City as beneficiary of OCMIA and OCMFA joins its trustees as a political subdivision seeking to enforce its rights also in its sovereign capacity.

Sovereign capacity differs from sovereignty itself. The State of Alabama argued that its counties should receive the same treatment under a state legislative apportionment act as that received by the original thirteen states in relinquishing "some of their sovereignty in agreeing to join together 'to form a more perfect union'". *Reynolds v. Simms*, 377 U.S. 533, 574, 84 S.Ct. 1362, 1388, 12 L.Ed.2d 506 (1964). The United Stated Supreme Court refused to apply the so called "federal analogy", stating that

"political subdivisions ... never were an never have been considered as sovereign entities. Rather, ... these governmental units are created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them, and the number, nature and duration of the powers conferred upon them ... rests in the absolute discretion of the state." *Reynolds* at 575, 84 S.Ct. at 1388; *Hunter v. City of Pittsburg*, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907).

We do not suggest that the appellants before us exist as sovereign entities. We merely adhere to existing law that confers upon them by virtue of their status as state agencies the power to act in a sovereign *capacity* free from statutes of limitation in order to vindicate vested public rights.

Having found that all the plaintiffs appear in their sovereign capacity, we focus finally upon the nature of the rights affected by this long term plan for the extension and improvement of water mains used to supply water to the Oklahoma City area. In making this determination, we must examine the undisputed activities of plaintiffs to determine if they affect the public generally. *Sears v. Fair*, 397 P.2d 134 (Okl. 1964).

This Court defined public right in an action in which a writ of mandamus issued compelling the Secretary of State to deliver notary commissions to those appointed by the governor. *State v. Lyon*, 165 P. 419 (Okl.1917). The court ruled that it could not assume jurisdiction "unless the public has some right in the question before the court," and defined the word public to mean "pertaining to the people, or affecting the community at large; that which concerns a multitude of people," ... and further defined "right" as "a well founded

claim; an interest; concern; advantage; benefit." *Id.* at 420.

Just as *Lyon* required this court to determine whether the office of notary affected the business of the whole people of the state, so must we make a similar determination with respect to the delivery of adequate potable water to the Oklahoma City area. In so doing, we discover that the delivery of utility services has often been discussed in this forum.

This court granted a writ prohibiting the Corporation Commission from assuming jurisdiction over a public trust engaged in providing water to the Oklahoma County area. *Oklahoma County Utility Services Authority v. Corporation Commission,* 478 P.2d 352 (Okl.1970). The court described the utility authority saying that "[i]ts services are used by the public, and its activities are of public consequence. *It is a public business,* or a business effected with a public interest. *The same may be said of a city owned and operated water distribution system." Id.* at 353. (emphasis supplied).

Additionally, this court examined the documents creating OCMIA and upheld the validity of that trust in *Harrison v. Barton,* 358 P.2d 211 (Okl.1960). At trial, the parties entered numerous findings of fact, one of which recites the purposes of the trust and includes among other things the construction of "public utility properties ... for use by the United States of America, or the State of Oklahoma, or by authority for agencies of the United States or Oklahoma, or any municipality thereof, or any political subdivisions, including the beneficiary of said trust, the City of Oklahoma City." *Id.* at 213–14.

OCMIA's original purpose clearly contemplated a nationwide range of rights affected by water delivery. Regardless of any changes which may or may not have occurred in the trust indenture, the overall purpose of the trusts before us continues to affect the public generally. OCMFA receives federal funds. The statutes controlling public trusts confer upon them status of state agencies. Delivery of ade-

quate drinking water affects every single person who resides in or travels through the Oklahoma City area. In upholding the validity of a similar trust, this court found that the "trust was created to furnish utility services to the inhabitants of unincorporated areas in Oklahoma County, services and facilities for safeguarding the public health, the protection of persons and property and to promote generally the public welfare of such character as may be the authorized or proper function of the beneficiary of the trust." *Board of County Commissioners of Oklahoma County v. Warram,* 285 P.2d 1034 (Okl.1955).

We find it inconceivable that the rights at issue could be anything but public rights. As the flow of notarized documents throughout the state affects the business rights of the general public,[9] so too the flow of water in Oklahoma City affects the rights not only of the citizens whose water travels through those 8½ miles of pipe, but also the rights of travelers, of fairgoers, of horserace fans, and of businesses contemplating expansion or relocation here. Water is fundamental to existence. This necessity entitles the general public to expect an adequate water supply in the Oklahoma City area.

■ That statutes of limitation fail to bar plaintiffs' actions does not resolve one final issue with respect to the statute of repose found at 12 O.S.1981 § 109. We noted the inherent difference between a statute of limitations and one of repose in *Smith v. Westinghouse,* 732 P.2d 466 (Okl. 1987) stating that

[t]hey are different in the sense that a statute of limitations serves to place a limit on the plaintiff's time to bring an action. After the prescribed time period has lapsed, a statute of limitation serves to extinguish the remedy for the redress of an accrued cause of action. A statute of repose, by way of contrast, restricts potential liability by limiting the time during which a cause of action can arise. It thus serves to bar a cause of action before it accrues. In a practical sense, a

---

9. *State v. Lyon,* 63 Okl. 285, 165 P. 419 (1917).

statute of limitation implicitly seeks to punish those who sleep on their rights, while a statute of repose, operates to bar some plaintiffs' recovery, no matter how diligent they may have been in asserting their claims. *Id.* at 468–69 n. 11.

However, the first leak in the Phase III water system at issue occurred in June, 1980, a period well within the time constraints imposed by 12 O.S.1981 § 109 *during which a cause of action may accrue.* Consequently, since plaintiffs' initial right of action accrued and vested within the prescribed time period, the statute governs in this case not the substantive issue of the existence of a right, but the procedural aspect of the availability of a remedy. Once a cause of action arises, applicable statutes of limitation begin to operate placing a limit on the plaintiff's availability of remedy. Since plaintiffs initial cause of action arose and vested during the ten year period prescribed by law, public policy compels us to adhere to the general rule that public rights should not be prejudiced by the tardiness of officials to whom those rights are entrusted. *State ex rel. Cartwright v. Tidmore,* 674 P.2d 14, 16 (Okl. 1983).

Accordingly, we grant certiorari and vacate the opinion of the Court of Appeals, holding that neither statutes of limitation nor repose shall bar plaintiffs' actions brought in their sovereign capacity to vindicate *vested* public rights. In so holding we apply existing Oklahoma norms, recognizing but in no way expanding the remedies available to the state and its subdivisions. We reverse the orders of the district court granting summary judgment, and remand the matters for further proceedings below.

DOOLIN, C.J., HARGRAVE, V.C.J., and LAVENDER, SIMMS and ALMA WILSON, JJ., concur.

1. At common law, *personal* actions are for the recovery of movable property or for damages or other forms of redress for breach of contract or other kind of injury other than those affecting interests in land. *Mathews v. Sniggs,* 75 Okl. 108, 182 P. 703, 708 [1919].
The terms of 12 O.S.Supp.1984 § 2002 provide: "There shall be *one form of action* to be known as 'civil action'." [Emphasis added.] Even though the distinction between actions at law and suits in equity and all the forms of

KAUGER, J., concurs in part, dissents in part.

HODGES and OPALA, JJ., dissent.

OPALA, Justice, dissenting.

The court declares that personal actions[1] by governmental entities subordinate to the state, who sue in a "sovereign capacity to protect vested public rights," are unaffected by statutory limitations. I cannot accede to today's departure from the general rule of the common-law which holds that, absent contrary legislation, *only the state* is protected from the effect of legislative time bars on personal actions. Moreover, in my view *no* city can ever sue in a "sovereign capacity" because it lacks that status.

Mindful of Oklahoma's strong public policy disfavoring litigation of stale claims, I would hold that, unless subordinate governmental entities be expressly excluded by statute, time to bring a personal action does run against them.

I

THE ENGLISH ANTECEDENTS OF AND THE GENERAL COMMON–LAW RULE FOR TESTING THE APPLICABILITY OF STATUTORY LIMITATIONS TO PUBLIC BODIES

The literal translation of the ancient maxim, *nullum tempus occurrit regi,* is that time does not run against the King. Before Parliament's rise to supremacy at the end of the XVIIth century, the phrase may have meant that legislative time bars *could not* affect the Crown. Today, the doctrine serves as but a rule of *statutory construction*[2] [hereafter called the *nul-*

those actions have been abolished for pleading purposes, *the principles of legal and equitable rights and remedies remain in force;* the Pleading Code was not intended to alter rights, duties, and liabilities. See 12 O.S.Supp.1984 § 2002, *supra,* and *Mathews v. Sniggs, supra,* 182 P. at 706–707.

2. See *State v. Weems,* 197 Okl. 106, 168 P.2d 629, 633 [1946] (Hurst, V.C.J., dissenting in part and quoting from *Morris v. State,* 88 Okl. 189,

*lum tempus* rule or the Rule] for testing the applicability to public entities of legislatively enacted limitations. By the English common law, time ran against *all* governmental entities inferior to the sovereign.[3] As now adopted by the mainstream of American states, the *nullum tempus* rule may be formulated thusly:

> The *state* is not subject to statutory limitations when acting in its sovereign capacity unless it be *expressly included* by the terms of the applicable enactment;[4] on the other hand, time does generally

run against inferior (non-sovereign) public bodies unless they are either *explicitly excluded* from the statute or are protecting their interests in real property held for the public's benefit.[5]

Political subdivisions—counties, cities, school districts, etc.—possess *none* of the attributes of true sovereignty[6] and never have been considered as governmental entities falling into that category.[7] Absent explicit legislative expression to the contrary, freedom from the effect of statutory limitations that govern personal actions[8]

---

212 P. 588, 588–589 [1923]) and *Lewis v. Moore,* 199 F.2d 745, 749 [10th Cir.1952].

**3.** The common-law rule, which relieves *the sovereign* from statutory time bars, is explained in *United States v. Thompson,* 98 U.S. 486, 489, 20 L.Ed. 194, 195 [1879], in this language:

> "The rule of nullum tempus occurrit regi has existed as an element of the English law from a very early period. * * *
>
> "The common law fixed no time as to the bringing of actions. *Limitations derive their authority from statutes. The King was held never to be included, unless expressly named.* No laches was imputable to him. These exemptions were founded upon considerations of public policy. It was deemed important that, while *the sovereign* was engrossed by the cares and duties of his office, the public should not suffer by the negligence of his servants. 'In a representative government, where the people do not and cannot act in a body, where their power is delegated to others, and must of necessity be exercised by them, if exercised at all, the reason for applying these principles is equally cogent.'
>
> "*When the Colonies achieved their independence, each one took these prerogatives, which had belonged to the Crown; and when the National Constitution was adopted, they were imparted to the new government as incidents of the sovereignty thus created. * * *"* [Emphasis added.]

See *Anderson v. Ritterbusch,* 22 Okl. 761, 98 P. 1002, 1012 [1908] and *White v. State,* 50 Okl. 97, 150 P. 716, 718 [1915].

**4.** Oklahoma's fundamental law does not appear to prevent the legislature from imposing reasonable time bars on the state or its political subdivisions for bringing lawsuits, so long as no vested rights or liabilities are disturbed. See *Charles Banfield Company v. State ex rel. Fallis,* Okl., 525 P.2d 638, 640 [1974] and *Love v. Silverthorn,* 187 Okl. 114, 101 P.2d 254, 257 [1940].

**5.** See Annot.: Statute of limitations as applicable to action by municipality or other political subdivisions in absence of specific provisions in that regard. 113 A.L.R. 376; 17 McQuillin, Mu-

nicipal Corporations (3rd Ed.) § 49.06 at 136. See also the cases cited *infra* note 26.

A leading municipal law textwriter summarized in this language the state of national law on the applicability of the *nullum tempus* rule to municipalities:

> "*Actions by municipalities are generally not exempt from the operation of general statutes of limitation, and their suits are therefore barred if the statutory period has run. Some jurisdictions qualify the rule and hold that, in the absence of a specific provision, general statutes of limitations apply to and may bar actions by local government units involving 'proprietary' rights but do not apply to actions involving 'governmental' rights.*" [Citations omitted and emphasis added.] Charles S. Rhyne, The Law of Local Government Operations (1980) § 33.7 at 1084.

**6.** *Metropolitan R. Co. v. District of Columbia,* 132 U.S. 1, 10 S.Ct. 19, 22–23, 33 L.Ed. 231 [1889], where the Court explained the political status of municipalities in this language:

> " * * * All municipal governments are but agencies of the superior power of the state or government by which they are constituted, and are invested with *only such subordinate powers of local legislation and control as the superior legislature sees fit to confer upon them.* * * *
>
> " * * * *The subordinate legislative powers of a municipal character, which have been or may be lodged in the city corporations ... do not make those bodies sovereign.* * * * We are clearly of the opinion that the plaintiff [District of Columbia] is a municipal corporation, having a right to sue and be sued, and subject to the ordinary rules that govern the law of procedure between private persons." [Emphasis added.]

**7.** *Reynolds v. Sims,* 377 U.S. 533, 575, 84 S.Ct. 1362, 1388, 12 L.Ed.2d 506 [1964] (cited in *Waller v. Florida,* 397 U.S. 387, 392, 90 S.Ct. 1184, 1187, 25 L.Ed.2d 435 [1970]).

**8.** See *supra* note 1.

should be confined to the sovereign state.[9]

## II

## OKLAHOMA'S COMMITMENT TO THE COMMON–LAW RULE FOR TESTING THE APPLICABILITY OF STATUTORY LIMITATIONS TO PUBLIC ENTITIES

This court *has refused* to sanction a political subdivision's suit brought for a *money judgment after* the limitation period had expired.[10] When the claim is by one public body against another, Oklahoma clearly requires a governmental entity's compliance with statutory limitations.[11] While I have

found no published opinion by this court where a personal action by some subordinate governmental entity against a private party was allowed to be brought after the applicable limitation period had expired,[12] our extant case law is replete with loose language that might lead one to conclude that the *nullum tempus* rule extends to personal actions by political subdivisions.[13] In my view, the ascription of sovereign status to a governmental entity other than the state is a pernicious, aberrational norm that should today be excised from the body of our jurisprudence.

In *real*[14] as distinguished from personal actions, the court has permitted the Rule to

9. See *State ex rel. Freeling v. Smith,* 77 Okl. 260, 188 P. 96 [1920]; *White v. State, supra* note 3; *Brown v. Board of Education,* 148 Okl. 97, 298 P. 249, 252 [1931]; *Sumpter v. State,* Okl., 418 P.2d 918, 919 [1966]; *State ex rel. Oklahoma Tax Com'n v. Emery,* Okl.App., 645 P.2d 1048, 1049–1050 [1982]; *Board of County Com'rs v. Good TP., infra* note 10 107 P.2d at 807–808 (Davison, J., dissenting); accord *State Insurance Fund v. Taron,* Okl., 333 P.2d 508, 513 [1958] (Statute of limitation barred the State Insurance Fund's action because the claim arose from its conduct of business, rather than from an activity attributable to the state's sovereignty.). See also *State ex rel. Cartwright v. Tidmore,* Okl., 674 P.2d 14, 15–16 [1983] and *Sears v. Fair,* Okl., 397 P.2d 134, 138 [1964]. The court relies today on both of these cases and holds limitations *inapplicable* to personal actions by municipalities. *Tidmore* was a *personal* action *by the state,* and *Sears* was a *real* action *against the state.* For the distinction between personal and real actions see *supra* note 1 and *infra* note 14, respectively.

10. See *Board of County Com'rs v. Willett,* 49 Okl. 254, 152 P. 365, 366 [1915] (citing *Foote v. City of Watonga, infra* note 13, and *Metropolitan R. Co. v. District of Columbia, supra* note 6); *Brown v. Board of Education, supra* note 9; and *School Dist. No. 34 v. Joint School Dist. No. 34,* 156 Okl. 5, 9 P.2d 771, 772–773 [1932]; but see Board of *County Com'rs v. Good TP.,* 188 Okl. 151, 107 P.2d 805 [1940], discussed *infra* note 12, and *State ex rel. Bd. of County Com'rs v. Shelton,* Okl.App., 727 P.2d 103, 106–107 [1986].

11. *School Dist. No. 34 v. Joint School Dist. No. 34, supra* note 10; *Brown v. Board of Education, supra* note 9, 298 P. at 253.

12. In *Board of County Com'rs v. Good TP., supra* note 10, this court *sub silentio* extended the sovereign's protection from limitations by al-

lowing it to be invoked offensively in a personal action *by one public entity against another.* The only issue the court discussed there was whether a county's right to recover on its matured bond investment should be characterized as *public* or *private.* Davison, J., noted in dissent that, in a sense, *every right* possessed by political subdivisions could be labeled a public right and *all* the property they hold viewed to be for public use. He concluded that limitations should apply to political subdivisions unless a public right be at stake, in which case the right should be one that belongs to all the people of the state. *Board of County Com'rs v. Good TP., supra* note 10, 107 P.2d at 807 (Davison, J., dissenting). For support of its reasoning the dissent cites *Herndon v. Board of Com'rs in and for Ponotoc County, infra* note 16, a *land* case. My view parallels that of Davison, J. See in this connection *Hershel v. University Hospital Foundation,* Okl., 610 P.2d 237, 242–243 [1980] (Opala, J., concurring specially) and *Bd. of Trustees of Bergen v. J.P. Fyfe, Inc.,* 192 N.J.Super. 433, 471 A.2d 38, 39–40 [1983].

13. See, e.g., *Foote v. Town of Watonga,* 37 Okl. 43, 130 P. 597 [1913] (syllabus 4), where the court held:
 " * * * 'Nullum tempus occurrit regi,' *is not restricted in its application to sovereign states or governments, but ... its application extends to and includes public rights of all kinds, and ... it applies to municipal corporations as trustees of the rights of the public,* and protects from invasion and encroachment *the property* of the municipality which is held for and devoted to public use, no matter how lax the municipal authorities may have been in asserting the rights of the public." [Emphasis added.]

14. *Real* actions are for the recovery of lands, tenements, or hereditaments or for the protection of real property interests. *Mathews v. Sniggs, supra* note 1, 182 P. at 708.

be invoked by a town [15] and by a county board [16] *to protect land interests held for the public's benefit.* When a squatter lays claim against a municipality, Oklahoma law is clear: absent contrary legislation, title to land held by a municipal corporation for the public's benefit cannot be acquired by adverse possession.[17] In short, *time does not run in favor of an adverse claimant seeking to acquire a municipal interest in land by lapse of time.* I would today leave undisturbed this extant jurisprudence which serves merely *to protect the public's title to real property.*[18]

Not even the sovereign's own privilege from the effect of time lapse is without bounds. When both the *right* and the *remedy* are affected by a statutory time bar,[19] the state's protection from passage of time has been rejected. The state is held bound by the time limits in the nonclaim statute,[20] 58 O.S.1981 § 333.[21] The marketable title act's provisions, 16 O.S.1981 §§ 72 and 73,[22]

---

**15.** See *Foote v. Town of Watonga, supra* note 13, 130 P. at 597–598.

**16.** See *Herndon v. Board of Com'rs in and for Pontotoc County,* 158 Okl. 14, 11 P.2d 939, 940 [1932].

**17.** *Town of Chouteau v. Blankenship,* 194 Okl. 401, 152 P.2d 379, 383 [1944].

**18.** When compared with ordinary limitations, statutes prescribing the minimum occupancy period for claiming title to land by adverse possession are in a somewhat different category. They do not only extinguish one's remedy to sue for possession of land. When real property has been adversely occupied for the statutory period, these limitations operate *"to vest the disseisor with title."* [Emphasis added.] 60 O.S. 1981 § 333, *infra; Stolfa v. Gaines,* 140 Okl. 292, 283 P. 563, 567 [1930]. The terms of 60 O.S. 1981 § 333 provide:

"Occupancy for the period prescribed by civil procedure, or any law of this State as sufficient to bar an action for the recovery of the property, *confers a title thereto,* denominated a title by prescription, *which is sufficient against all."* [Emphasis added.]

**19.** "Lapse of time, coupled with non-possession or inaction, may alter a man's legal position *vis-a-vis* his property, both corporeal and incorporeal, in several different ways. The law may (1) bar the owner from asserting his rights *by a droitural action and thus leave these rights suspended in a state of unenforceability;* (2) *extinguish his legal right as well as his remedy;* (3) transfer his right to another who has exercised them by long-continued possession or use; and (4) impose a presumption that long-continued possession or use by another had its beginning in a lawful devolution of right. *The legal concept embodied in the first example aims at destroying actionability only, while that in the second example also effects an extinguishment of rights.* \* \* \*" Opala, Praescripto Temporis and Its Relation to Prescriptive Easements in the Anglo–American Law, 7 Tulsa L.J. 107 (1971).

Statutes of repose, as distinguished from statutes of limitation, might be viewed as extinguishing the right, because they prevent the claim (the right) from accruing in the first

place. *Reynolds v. Porter,* Okl., 760 P.2d 816, 819–820 [1988]; *Smith v. Westinghouse Elec. Corp.,* Okl., 732 P.2d 466, 468–469 n. 11 [1987]. See also, *Mobbs v. City of Lehigh,* Okl., 655 P.2d 547, 550–551 [1982] and *State ex rel. Cent. State Griffin Mem. Hosp. v. Reed, infra* note 20.

**20.** See *State ex rel. Cent. State Griffin Mem. Hosp. v. Reed,* Okl., 493 P.2d 815, 818 [1972].

**21.** The pertinent terms of 58 O.S.1981 § 333 are:

*"If a claim arising upon a contract heretofore made, be not presented within the time limited in the notice* [two months from the date of the first publication under § 332], *it is barred forever,* except as follows: If it be not then due, or if it be contingent, it may be presented within one (1) month after it becomes due or absolute; if it be made to appear by the affidavit of the claimant, to the satisfaction of the executor or administrator and the judge of the district court, that the claimant had no notice as provided in this article, by reason of being out of the state, it may be presented at any time before a decree of distribution is entered \* \* \*." [Emphasis added.]

**22.** The pertinent terms of 16 O.S.1981 §§ 72 and 73 are:

"[§ 72] Such marketable record title shall be subject to:

\* \* \* \* \* \*

(b) All interests preserved by the filing of proper notice or by possession by the same owner continuously for a period of *thirty (30) years or more,* in accordance with Section 74 of this title."

\* \* \* \* \* \*

"[§ 73] *Subject to matters stated in Section 2 [§ 72] hereof,* such *marketable record title shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims or charges whatsoever,* the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title. *All such interests, claims or charges, however denominated,* whether legal or equitable, present or future, whether such interests, claims or charges are asserted by a per-

which extinguish the remedy as well as the right, are viewed as expressly *including* municipalities.[23]

Today's opinion casts a strained gloss on the *nullum tempus* rule and creates a dangerous precedent. At common law, when the remedy is lost by the passage of time, the remaining severed *right*, though unenforceable, continues to exist indefinitely.[24] Today, at least for personal actions, our case law gives inferior (non-sovereign) public bodies an *eternal remedy* to go with their *immortal common-law claim*.[25] There is *no* historical, logical or public policy warrant for this aberrational jurisprudence. Many other jurisdictions still adhere to the traditional English version of the *nullum tempus* doctrine of the common law.[26]

23. son sui juris or under a disability, whether such person is within or without the state, *whether such person is natural or corporate, or is private or governmental, are hereby declared to be null and void."* [Emphasis added.]

23. A city's interest in land is extinguished if it has not been preserved by filing a notice within a thirty-year period. *Mobbs v. City of Lehigh, supra* note 19.

24. Limitations bar *only one's remedy but never his right. The right never dies, while the time-barred remedy is lost forever.* " 'An immortal right to bring an eternally prohibited action is a metaphysical subtlety' produced by feudal jurists. The notion that a right may survive the extinction of all remedies for its enforcement is peculiar to the Anglo–American law." Opala, Praescripto Temporis and Its Relation to Prescriptive Easements in the Anglo–American Law, *supra* note 19 at 108 n. 1, 109–110.

25. "Statutes of limitation always have vexed the philosophical mind for it is difficult to fit them into a completely logical and symmetrical system of law. There has been controversy as to their effect. Some are of the opinion that like the analogous civil law doctrine of prescription limitations statutes should be viewed as extinguishing the claim and destroying the right itself. Admittedly it is troublesome to sustain as a 'right' a claim that can find no remedy for its invasion. *On the other hand, some common-law courts have regarded true statutes of limitation as doing no more than to cut off resort to the courts for enforcement of a claim.* We do not need to settle these arguments." [Footnotes omitted and emphasis added.] *Chase Securities Corporation v. Donaldson*, 325 U.S. 304, 313, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 [1945] (cited in

## III

## PUBLIC POLICY STRONGLY MILITATES AGAINST TODAY'S EXTENSION OF THE COMMON–LAW RULE FOR TESTING THE APPLICABILITY OF STATUTORY LIMITATIONS TO PUBLIC ENTITIES

The public policy that underlies our statutory limitations strongly militates against prosecution of stale claims. Time bars for bringing an action prevent fraudulent as well as forgotten demands from being sprung upon parties or their representatives after lengthy passage of time.[27] Without limitations "there would be injected into almost every transaction ... an element of uncertainty that would noticeably interfere with the stability of ordinary

*Pryse Monument Co. v. District Court, Etc.*, Okl., 595 P.2d 435, 438 n. 14 [1979] ).

26. See, e.g., *Covington County v. O'Neal*, 239 Ala. 222, 195 So. 234, 238 [1940] (citing *Montgomery County v. City of Montgomery*, 195 Ala. 197, 70 So. 642, 643–644 [1916] ); *Hart v. Sternberg*, 205 Ark. 929, 171 S.W.2d 475, 478 [1943]; *City of Los Angeles v. Los Angeles County*, 9 Cal.2d 624, 72 P.2d 138, 139–140 [1937] (followed in *San Marcos Water D. v. San Marcos Uni. School*, 190 Cal.App.3d 1038, 235 Cal.Rptr. 827, 830 [4 Dist. 1987] ); *R.A. Civitello Co. v. City of New Haven*, 6 Conn.App. 212, 504 A.2d 542, 546–547 [1986]; *Mayor and Council of Wilmington v. Dukes*, 52 Del. 318, 157 A.2d 789, 795 [1960]; *State v. Stuart*, 46 Ind.App. 611, 91 N.E. 613, 615 [1910]; *Great Western Ins. Co. v. Saunders*, 223 Iowa 926, 274 N.W. 28, 31–32 [1937]; *In re Ernst's Guardianship*, 158 Neb. 15, 62 N.W.2d 110, 111 [1954]; *Bd. of Trustees of Bergen v. J.P. Fyfe, Inc., supra* note 12, 471 A.2d at 39–40; *City of Buffalo v. Watkins*, 102 Misc.2d 17, 422 N.Y.S.2d 563, 563–564 [1979]; *Rosedale School Dist. No. 5 v. Towner County*, 56 N.D. 41, 216 N.W. 212, 215–216 [1927]; *State v. Gibson*, 130 Ohio St. 318, 199 N.E. 185, 186–187 [1935] (followed in *City of Kettering v. Berger*, 4 Ohio App.3d 254, 448 N.E.2d 458, 465 [1982] ); *Trustees of Proprietors of Kingston v. Lehigh Valley C. Co.*, 241 Pa. 469, 88 A. 763, 766 [1913]; *Johnson v. Black*, 103 Va. 477, 49 S.E. 633, 638 [1905]; and *Burns v. Board of Sup'rs of Stafford County, supra* note 28, 315 S.E.2d at 858–860.

27. *C & C Tile Co. v. Independent Sch. D. No. 7 of Tulsa Cty.*, Okl., 503 P.2d 554, 559 [1972]; *Special Indemnity Fund v. Barnes*, Okl., 434 P.2d 218, 221 [1967]; *Adams v. Coon*, 36 Okl. 644, 129 P. 851, 853 [1913].

business affairs."[28] Statutes of limitation exist to encourage a speedy pursuit of one's remedy. They prevent innocent parties from being harassed and required to defend old disputes in the face of lost or forgotten evidence and dead or missing witnesses.[29] The court's holding today contravenes the very purpose of limitations by allowing a select class of plaintiffs to prosecute personal actions *without regard to statutory time bars.*

## IV

*EVEN IF* THE *NULLUM TEMPUS* RULE WERE TO BE EXTENDED SO AS TO FREE NON–SOVEREIGN ENTITIES FROM LEGISLATIVELY ENACTED TIME BARS ON PERSONAL ACTIONS BROUGHT BY THEM TO ASSERT A (NON–SOVEREIGN) "PUBLIC RIGHT," THE CITY CANNOT IN THIS CASE ESCAPE STATUTORY LIMITATIONS BECAUSE IT SEEKS *NO* REDRESS FOR A BREACHED DUTY OWED TO IT AS AN ORGAN OF LOCAL GOVERNMENT.

Real property interests which political subdivisions are allowed to protect unimpeded by statutory time bars are properly labeled as "public" rights. Assuming that some *other* kind of non-sovereign "public" right does fall under this rubric and hence its protection may as well be unaffected by limitations, a city's *contract or tort* claim, like that in litigation here, should not be characterized as one in the same class. This is so because it implicates merely "private" rights which do not affect the citizens of this state as a whole.[30] A non-sovereign's suit to recover either on a promise-based obligation or for a contract's "tortious breach" rests on the obligor's *consensually assumed* duty rather than on one exacted through the exercise of *governmental authority.* In short, a political subdivision's personal action for recovery of money—not owed it *qua* a public body obligee[31]—implicates only "private" rights and may hence be barred by statutory time limits.[32]

Legislation of other states, which requires that statutory limitations *be applied* to the state and its political subdivisions, most often makes *no distinction between "governmental" (public) or "proprietary" (private) rights.*[33] Although in Oklahoma

---

**28.** *Adams v. Coon, supra* note 27. See also, *Burns v. Board of Sup'rs of Stafford County,* 227 Va. 354, 315 S.E.2d 856, 859 [1984].

**29.** *Adams v. Coon, supra* note 27.

**30.** See *Board of County Com'rs v. Good TP., supra* note 10, 107 P.2d at 808 (Davison, J., dissenting) and *R.A. Civitello Co. v. City of New Haven, supra* note 26, 504 A.2d at 546.

**31.** Even where one municipality sues another over a matter of purely fiscal accounting the action is subject to statutory limitations. See *Brown v. Board of Education, supra* note 9, 298 P. at 252.

**32.** See *People v. Hale,* 320 Ill.App. 645, 52 N.E.2d 308, 310–311 [1943]; *Great Western Ins. Co. v. Saunders, supra* note 26, 274 N.W. at 31–32; *Bd. of Trustees of Bergen v. J.P. Fyfe, Inc., supra* note 12, 471 A.2d at 40; *Bergen Commun. Col. Trustees v. J.P. Fyfe, Inc.,* 188 N.J.Super. 288, 457 A.2d 83, 86–88 [1982]; and *City of Reidsville v. Burton,* 269 N.C. 206, 152 S.E.2d 147, 151–152 [1967].

In *Bd. of Trustees of Bergen v. J.P. Fyfe, Inc., supra* note 12, 471 A.2d at 40, the New Jersey appellate court noted that there was no support in authority for extending the *nullum tempus* rule to *personal actions:*

"No case in this state is cited, nor is one disclosed in research, holding that the state or a governmental subdivision either may or may not bring a cause of action *for unliquidated damages for breach of contract or for tort, beyond the time period of the statute of limitations and exempt from its bar in the absence of a specific statutory provision.*

\* \* \* \* \* \*

"*Without precedential authority in this state and contrary to strong decisional law authority elsewhere in the United States, we do not extend the benefit of the ancient doctrine of nullum tempus occurrit regi* to plaintiff community college, *a political subdivision, in its action to recover damages in contract and in tort* for alleged defective materials and workmanship in the construction of the roof of a college building." [Emphasis added.]

**33.** See, e.g., *State v. United States Fidelity & Guaranty Co.,* 239 Ala. 445, 195 So. 426, 427 [1940]; *Tehama County v. Pacific Gas & Electric Co.,* 33 Cal.App.2d 465, 91 P.2d 936, 941 [3 Dist.1939]; *MacNeill v. McElroy,* 193 Ga. 55, 17 S.E.2d 169, 171 [1941]; *Lemhi County v. Boise Live Stock Loan Co.,* 47 Idaho 712, 278 P. 214, 216 [1929]; *City of New Bedford v. Lloyd Investment Assoc., Inc.,* 363 Mass. 112, 292 N.E.2d 688, 691 [1973]; *Town of Crenshaw v. Panola Coun-*

the governmental/proprietary dichotomy has been renounced by the legislature in both the tort-immunity [34] and land-title [35] contexts, the court today casts the ex contractu/ex delicto claim in controversy in the form of one which implicates "public" rights for the purpose of allowing subordinate governmental entities to benefit from the *nullum tempus* rule.

I stood opposed to fashioning the governmental/proprietary dichotomy for application to the state's tort liability.[36] Today, I express like hostility to the distinction's use for freeing non-sovereign governmental bodies from the effect of statutory limitations.

## CONCLUSION

Today's pronouncement doubtless will force many a party to defend against a non-sovereign's personal action brought *decades after the claim had accrued.* By the rise of governmental tort claim statutes, the public/private right distinction has now been relegated to antiquarian lore. If the court were to follow the standard American version of the *nullum tempus* rule, the protection enjoyed by municipalities *qua* holders of public interests in land would not be diminished one iota, yet those public bodies would grow powerless to harass either private citizens or other governmental entities with their ancient claims. A city's lawyer should be held to no lesser

degree of vigilance when bringing a personal action in the municipality's behalf than is expected of counsel who champion private causes.[37]

In short, I would hold that:

Because adverse possession of publicly held land can never ripen into title by prescription in favor of the hostile claimant, his period of occupancy will not run against any governmental record owner who holds for the public's benefit; but time to bring a personal action does run against subordinate (non-sovereign) political entities *unless* the applicable statutory limitation explicitly excludes them from its operation.

To guard against all risk of upsetting settled rights, I would apply my pronouncement to this case, to all litigation now in appellate and certiorari process, and to those actions in the lower tribunals in which judgment will have been rendered after the issuance of mandate in this appeal.

---

ty, 115 Miss. 891, 76 So. 741, 743 [1917]; *City of Pendleton v. Holman,* 177 Or. 532, 164 P.2d 434, 437 [1945]; *City of Kaufman v. French,* 171 S.W. 831, 836 [Tex.Civ.App.1914]; *Village of Gilman v. Northern States Power Co.,* 242 Wis. 130, 7 N.W.2d 606, 608–609 [1943]; and Annot.: Statutory provision that statute of limitation shall not apply to action in name of municipality or other public corporation, as applicable to actions involving proprietary as distinguished from governmental functions. 162 A.L.R. 261.

**34.** See 51 O.S.Supp.1984 § 152.1(A) and 51 O.S. 1981 § 166, *infra.*

The terms of 51 O.S.Supp.1984 § 152.1(A) are: "The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, *whether performing governmental or proprietary functions,* shall be immune from liability for torts." [Emphasis added.]

The terms of 51 O.S.1981 § 166 are:
"The distinction existing between governmental functions and proprietary functions of political subdivisions *shall not be affected* by the provisions of this act; however *the provisions of this act shall apply to both governmental and proprietary functions."* [Emphasis added.]

**35.** See 16 O.S.1981 § 73, *supra* note 22 and *Mobbs v. City of Lehigh, supra* note 19, 655 P.2d at 551.

**36.** *Hershel v. University Hospital Foundation* (Opala, J., concurring specially), *supra* note 12, 610 P.2d at 242–243.

**37.** "It is just as much for the public interest and tranquility that municipal corporations should be limited in the time of bringing suits as that individuals or private corporations should be." *Metropolitan R. Co. v. District of Columbia, supra* note 6, 10 S.Ct. at 23.